Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Nathan N. Kiyam (SBN 317677)
Nate.Kiyam@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

Russell D. Paul (*pro hac vice* forthcoming)
rpaul@bm.net
Abigail J. Gertner (*pro hac vice* forthcoming)
agertner@bm.net
Amey J. Park (*pro hac vice* forthcoming)
apark@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE ROHAN, NATHAN ROHAN, SANDRA YANKOW, RYAN KAUFMAN, MELODY KAUFMAN, MESHULLAM WALLACE, CALEN REGNIER, and TIFFANY REGNIER, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MAZDA MOTOR OF AMERICA, INC., a California corporation, and MAZDA MOTOR CORPORATION, a Japan corporation.<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br>(1)  Breach of Express Warranty under the Magnuson-Moss Warranty Act<br>(2)  Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(3)  Fraudulent Concealment/Omission<br>(4)  Unjust Enrichment<br>(5)  Violations of the Florida Deceptive and Unfair Trade Practices Act<br>(6)  Breach of Express Warranty under Florida law<br>(7)  Breach of Implied Warranty under Florida law<br>(8)  Violations of the Ohio Consumer Sales Practices Act |

(9)    Breach of Express Warranty under Ohio law

(10)   Breach of Implied Warranty under Ohio law

(11)   Violations of the Oregon Unlawful Trade Practices Act

(12)   Breach of Express Warranty under Oregon law

(13)   Breach of Implied Warranty under Oregon law

(14)   Violations of the Texas Deceptive Trade Practices Act - Consumer Protection Act

(15)   Breach of Express Warranty under Texas law

(16)   Breach of Implied Warranty under Texas law

(17)   Violations of the Washington Consumer Protection Act

(18)   Breach of Express Warranty under Washington law

(19)   Breach of Implied Warranty under Washington law

**DEMAND FOR JURY TRIAL**

1. Plaintiffs Denise Rohan, Nathan Rohan, Sandra Yankow, Ryan Kaufman, Melody Kaufman, Meshullam Wallace, Calen Regnier, and Tiffany Regnier ("Plaintiffs"), bring this action individually and on behalf of all persons in the United States, and in the alternative on behalf of all persons in the states of Florida, Ohio, Oregon, Texas, and Washington who purchased or leased certain 2019-2020 CX-5, 2016-2020 CX-9 and 2018-2020 Mazda6 vehicles containing SKYACTIV-G 2.5T engines ("Class Vehicles") against Defendants Mazda Motor of America, Inc. d/b/a Mazda North American Operations ("MNAO") and Mazda Motor Company ("MMC") (together with MNAO, "Mazda"). The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made as to other matters based on investigation by counsel, including analysis of publicly available information. Plaintiffs allege as follows:

## I. INTRODUCTION

2. Mazda manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Vehicles.

3. This is a consumer class action concerning the misrepresentation of material facts, the failure to disclose material facts, and safety concerns to consumers.

4. Mazda manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles possessed a defect that materially affects the ability of the vehicles to operate as intended and provide safe, reliable transportation. Instead, Mazda equipped these vehicles with a defective engine and falsely marketed the vehicles as safe to drive, durable, reliable, and capable of providing transportation.

5. Specifically, Plaintiffs allege that the engines in the Class Vehicles suffer from latent design, workmanship, and/or manufacturing defects in the Class Vehicles' engines which undermine the structural integrity of the engine blocks around the cylinder heads and exhaust manifold joint (the "Engine Coolant

Defect" or "Defect"). The Defect can cause engine coolant leakage which results in the engine overheating and catastrophic engine failure. The Defect allows engine coolant, which is required to mitigate the high heat produced by the engine, to leak into the engine's cylinders. The lack of coolant in the proper area of the engine, created by such leaks, causes overheating and can, even at low mileages, result in the cylinder head cracking and, in some instances, can cause sudden stalling, total engine failure, and/or engine fires. Presence of coolant within the cylinders of the engine can also cause corrosion, oil dilution and contamination, and loss of power due to the lack of a good seal in the combustion chamber as well as engine failure.

6.     Despite Mazda's knowledge, as early as 2015, of the existence and severity of the Defect, it touted the quality, durability, reliability, and performance of the Class Vehicles via its public statements and multimedia marketing campaigns.  Mazda also advertised that the vehicles were of high quality, with exceptional performance and comparatively low cost of ownership.

7.     Discovery will show that the Defect is the result of: (1) a supplier manufacturing defect in the engine block and/or head gasket; (2) the use of sub-standard materials in the manufacture of the engine such that it cannot maintain adequate pressure; (3) a defective design of the engine; and/or (4) poor quality-control procedures to ensure such defectively manufactured and/or designed components are not installed in the Class Vehicles.

8.     The Defect is inherent in each Class Vehicle and was present at the time of sale or lease to each Class Member.  Each of the engines installed in the Class Vehicles is identical or substantially similar, in that Mazda has made no material changes to the engine over the applicable timeframe, i.e. the production of the Class Vehicles.[1] The Defect not only causes unsafe driving conditions, but

---

[1] As explained in more detail *infra*, Mazda subsequently redesigned the cylinder head in vehicles produced after June 2020.  These vehicles are not Class

also causes internal damage to other components, notably the engine, which can be damaged when the coolant supply is inadequate.

9.      Because Mazda has no repair for the Defect and merely replaces defective parts with equally defective parts, consumers are often faced with repeated repairs because the replacement parts do not cure the Defect.  Further, many repairs leave damage to other components unaddressed, which, given the cumulative harmful effects of the Defect, undermines the expected life of the vehicle even when repairs are made before complete engine failure.

10.     Knowing that there is no permanent repair for the Defect, Mazda directs its authorized dealerships to merely replace certain parts with equally defective parts, while informing consumers that their vehicles are fixed, including when repairs were made under warranty.  In this matter, Mazda has purposefully concealed the existence and extent of the Defect, in order to transfer the costs of repairs from itself to unsuspecting consumers.

11.     The Defect not only decreases the value of the Class Vehicles, because there is no permanent repair, it can endanger drivers and passengers in the vehicles.  For example, when the vehicles suddenly lose power, hesitate, or stall, drivers will be unable to maintain speed on highways or other roadways, leading to an increased chance of collision.  The Defect also creates uncertainty for Class Vehicle owners and lessees, who cannot rely on their vehicles to operate safely or reliably, even after repairs have been performed.

12.     Despite knowing that the Class Vehicles are equipped with engines that suffer from a defect in their design, manufacturing, materials, and/or workmanship that causes them to prematurely fail well before their useful and expected life, while also damaging internal engine components, Mazda failed to disclose such information about the Defect to the public and failed to offer a

Vehicles.

permanent remedy for the Defect.  Rather, Mazda represented that the engines installed in Class Vehicles were of high-quality and reliable, as well as sufficient for the intended use of the vehicles. Mazda's deliberate non-disclosure and omission of these defects artificially inflated the purchase and lease price for these vehicles.  Had Mazda disclosed the Defect, Plaintiffs and the Class Members would not have purchased their vehicles or would have paid less for them.

13.   When an automobile manufacturer sells a car, it has a duty under federal law to ensure that the car functions properly and safely and is free from material defects which undermine the ability of the vehicle to provide safe, reliable transportation.   Federal law requires that when an automobile manufacturer discovers a defect, it must disclose the defect and remedy the problem or cease selling the car.  Further, when a company provides a warranty, it must honor that warranty.   Mazda deceived its customers when it promised to stand by the warranties it issued to purchasers when it had no intent to do so, when it failed to honor the warranties by providing only illusory repairs, when it sold vehicles that were not capable of providing safe, reliable transportation, and when it failed to disclose a safety defect in the Class Vehicles.

14.   Plaintiffs and Class Members reasonably expected that Mazda's representations that the Class Vehicles were properly engineered and equipped to handle ordinary, public road driving would be true and complete and would not omit material information.  However, Mazda concealed and failed to disclose to Plaintiffs and members of the Classes that the Defect exists in the Class Vehicles and that there is a significant safety risk when the Class Vehicles suddenly misfire, hesitate, buck, lose power, or even completely stop while being driven. Moreover, Mazda concealed that, as a result of the Defect, the Class Vehicles will require significant, costly repairs.

15.   Based on pre-production testing and design failure mode analysis, warranty claims, replacement part orders, ongoing communications with its

suppliers regarding defective parts, consumer complaints, including complaints to NHTSA, and testing done in response to those complaints, as well as other sources of internal data not available to consumers, Mazda was aware of the Defect in the Class Vehicles but concealed the Defect from Plaintiffs and Class Members. Indeed, despite being aware of the Defect and numerous complaints, Mazda knowingly, actively and affirmatively omitted and/or concealed the Defect's existence to increase profits by selling additional Class Vehicles and by unlawfully transferring the cost of repair and replacement of the defective parts to Plaintiffs and members of the Class Members.

16.     Mazda has exclusive knowledge of, and has been in exclusive possession of, information pertaining to the Defect, which was material to Plaintiffs and Class Members, who could not reasonably know of the Defect. Mazda has not disclosed the Defect to the purchasers or lessees, like Plaintiffs, at the point of purchase or through advertisements or marketing materials. Such full and complete disclosures would have influenced Class Members' purchase decisions and the purchase price they paid. Under all circumstances, Mazda had a duty to disclose the latent Defect at the point of sale of the Class Vehicles. Instead, Mazda failed and refused—and continues to refuse—to disclose the Defect and provide a meaningful remedy to those who have suffered economic harm as a result of the Defect.

17.     The Engine Coolant Defect is a latent defect that presents a safety risk to drivers and passengers, causes damages to internal components over time, and makes vehicles equipped with the defective engines imminently dangerous. It makes the Class Vehicles unfit for the ordinary and advertised use of providing safe and reliable transportation. As such, the Defect presents a breach of the implied warranty of merchantability.

18.     Additionally, because Mazda concealed and failed to disclose the Defect, owners have suffered and continue to suffer substantial damages and

1    should be entitled to the benefits of all tolling and estoppel doctrines.

2         19.    As a direct and proximate result of Mazda's concealment of, and
3    failure to disclose, the Defect, Plaintiffs and Class Members: (1) overpaid for the
4    Class Vehicles  because the Defect significantly diminishes the value of the
5    Vehicles; (2) have Vehicles that suffer premature engine failures;  (3) have and/or
6    must expend significant money to have their Vehicles (inadequately) repaired; and
7    (4) are not able to use their Vehicles for their intended purpose and in the manner
8    Mazda advertised.

9         20.    In the United States, Mazda provides warranty coverage for Class
10   Vehicles under one or more warranties.  For illustrative purposes, Mazda currently
11   offers a 3-year/36,000 mile basic limited warranty and a 5-year/60,000 mile
12   powertrain limited warranty for every vehicle, including the Class Vehicles.

13        21.    Mazda breached its express and implied warranties through which
14   Mazda promised to, *inter alia*: (1) provide Class Vehicles fit for the ordinary and
15   advertised purpose for which they were sold; and (2) repair and correct
16   manufacturing defects or defects in materials or workmanship of any parts Mazda
17   supplied.  Because the Defect was present at the time of sale or lease of the Class
18   Vehicles and concealed from Plaintiffs and members of the Classes, Mazda, was
19   required to repair or replace these components under the terms of the warranties.
20   Yet, discovery will show that Mazda has failed to repair or replace the defective
21   and damaged parts, free of charge, under Mazda's warranties.

22        22.    Mazda's decision to sell the Class Vehicles without disclosing its
23   specialized knowledge of the Defect also violates consumer state laws.

24        23.    Plaintiffs and Class Members have purchased and leased Class
25   Vehicles that they would not otherwise have purchased or leased, or would have
26   paid less for, had they known of the Defect at the point of sale.  Plaintiffs and
27   Class Members have consequently suffered ascertainable losses and actual
28   damages. Moreover, Plaintiffs seek equitable remedies, including *inter alia*, an

order that the Class Vehicles are defective and injunctive relief preventing Mazda from continuing its wrongful conduct as alleged herein.

## II.  THE PARTIES

**Plaintiffs Denise and Nathan Rohan**

24.     Plaintiffs Denise and Nathan Rohan are Oregon citizens residing in Wilderville, Oregon.

25.     In or around June 2020, Plaintiffs Rohan purchased a used 2016 Mazda CX-9 from Crater Lake Ford Lincoln in Medford, Oregon.

26.     Plaintiffs Rohan purchased their vehicle primarily for personal, family, or household use.

27.     Passenger safety and reliability were important factors in Plaintiffs Rohan's decision to purchase their vehicle. Before making their purchase, Plaintiffs Rohan researched the 2016 Mazda CX-9 online. At the dealership, Plaintiffs Rohan also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiffs Rohan also discussed the safety features of the vehicle with dealership personnel, who made no reference to the Engine Coolant Defect. Plaintiffs believed that the 2016 Mazda CX-9 would be a safe and reliable vehicle.

28.     Mazda's omissions were material to Plaintiffs. Had the Mazda disclosed its knowledge of the Defect before they purchased their vehicle, Plaintiffs Rohan would have seen and been aware of the disclosures. Furthermore, had they known of the Engine Coolant Defect, Plaintiffs Rohan would not have purchased their vehicle.

29.     Shortly after purchase, Plaintiffs Rohan began experiencing difficulties with their Class Vehicle's engine coolant. Specifically, the engine coolant began leaking resulting in the vehicle overheating, as shown by the indicator on the dashboard. Plaintiff Denise Rohan is afraid to drive the vehicle due to the vehicle overheating and potentially leaving her stranded.

30.     In or about June 2022, with approximately 65,000 miles on the odometer, Mr. and Mrs. Rohan's vehicle started leaking coolant and overheating. On or around June 27, 2022, Mr. and Mrs. Rohan brought their vehicle to Crater Lake Mazda, which confirmed a coolant leak and stated the head gasket needed to be replaced. On or around July 13, 2022, Plaintiffs Rohan had the repair performed and paid approximately $2,400 for the repair.

31.     As a result of the Engine Coolant Defect, Plaintiffs Rohan have lost confidence in the ability of their Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiffs Rohan will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although they would like to do so.

32.     At all times, Plaintiff Denise and Nathan Rohan, like all Class Members, have driven their vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Sandra Yankow**

33.     Plaintiff Sandra Yankow is a Florida citizen residing in Lake Worth, Florida.

34.     In or around April 2020, Plaintiff Yankow purchased a used 2018 Mazda CX-9 from Honda dealership in Florida.

35.     Plaintiff Yankow purchased her vehicle primarily for personal, family, or household use.

36.     Passenger safety and reliability were important factors in Plaintiff Yankow's decision to purchase her vehicle. Before making her purchase, Plaintiff Yankow researched the 2018 Mazda CX-9 online, including visiting the dealership website. At the dealership, Plaintiff Yankow also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiffs Yankow also discussed the safety features of the vehicle with

dealership personnel, who made no reference to the Engine Coolant Defect. Plaintiffs believed that the 2018 Mazda CX-9 would be a safe and reliable vehicle.

37.     Mazda's omissions were material to Plaintiff Yankow. Had Mazda disclosed their knowledge of the Engine Coolant Defect before she purchased her vehicle, Plaintiff Yankow would have seen and been aware of the disclosures. Furthermore, had she known of the Engine Coolant Defect, Plaintiff Yankow would not have purchased their vehicle.

38.     Shortly after purchase, Plaintiff Yankow began experiencing difficulties with her Class Vehicle's engine coolant. Specifically, the engine coolant began leaking resulting in the vehicle overheating, as shown by the indicator on the dashboard.  Plaintiff Yankow is afraid to drive the vehicle due to the vehicle overheating and potentially leaving her stranded.

39.     In or about April 2024, with approximately 48,000 miles on the odometer, Ms. Yankow's vehicle began to overheat while she was driving. On or around April 12, 2024, Plaintiff Yankow brought her vehicle to an authorized Mazda dealership, Southern Palms Mazda, located in Royal Palm Beach, Florida, where the dealership confirmed her vehicle had a cracked cylinder head and recommended an engine replacement. Plaintiff Yankow had the dealership replace her engine and paid approximately $10,000 for the repair.

40.     As a result of the Engine Coolant Defect, Plaintiff Yankow has lost confidence in the ability of her Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Yankow will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although she would like to do so.

41.     At all times, Plaintiff Sandra Yankow, like all Class Members, has driven her vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiffs Ryan and Melody Kaufman**

42.     Plaintiffs Ryan and Melody Kaufman are Michigan citizens, residing in Temperance, Michigan.

43.     On or around July 2, 2018, Plaintiffs Kaufman purchased a certified pre-owned 2018 CX-9 Mazda, with approximately 9,500 miles on the odometer from a Mazda-authorized dealership, Brown Mazda-Mitsubishi, located in Toledo, Ohio.

44.     Plaintiffs Kaufman purchased their vehicle primarily for personal, family, or household use.

45.     Passenger safety and reliability were important factors in Plaintiffs Kaufman's decision to purchase their vehicle. Before making their purchase, Plaintiffs Kaufman researched the 2018 Mazda CX-9 both online and in consumer reports. At the dealership, Plaintiffs Kaufman also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiffs Kaufman also discussed the safety features of the vehicle with dealership personnel, who made no reference to the Defect.  Plaintiffs believed that the 2018 Mazda CX-9 would be a safe and reliable vehicle.

46.     Mazda's omissions were material to Plaintiffs. Had the Mazda disclosed its knowledge of the Engine Coolant Defect before they purchased their vehicle, Plaintiffs Kaufman would have seen and been aware of the disclosures. Furthermore, had they known of the Engine Coolant Defect, Plaintiffs Kaufman would not have purchased their vehicle.

47.     Shortly after purchase, Plaintiffs Kaufman began experiencing difficulties with their Class Vehicle's engine coolant. Specifically, the engine coolant began leaking resulting in the vehicle overheating, as shown by the indicator on the dashboard.  Plaintiffs Kaufman are afraid to drive the vehicle due to the vehicle overheating and potentially leaving her stranded.

48.     On or around March 19, 2024, with approximately 130,000 miles on

the odometer, Mr. and Mrs. Kaufman's vehicle began to experience the Defect, in that Plaintiffs Kaufmans noticed a coolant leak. On or around March 26, 2024, at a routine oil change and inspection at K&R Automotive Repair, an independent repair shop located in Sylvania, Ohio, a mechanic confirmed a crack and replaced the engine. Mr. and Mrs. Kaufman paid approximately $10,106 for the engine replacement.

49.     As a result of the Engine Coolant Defect, Plaintiffs Kaufman have lost confidence in the ability of their Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiffs Kaufman will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although they would like to do so.

50.     At all times, Plaintiffs Ryan and Melody Kaufman, like all Class Members, have driven their vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Meshullam Wallace**

51.     Plaintiff Meshullam Wallace is a Texas citizen, residing in Houston, Texas.

52.     In 2019, Plaintiff Wallace purchased a new 2018 Mazda6 from a Mazda-authorized dealership, Joe Myers Mazda, located in Houston, Texas.

53.     Plaintiff Wallace purchased his vehicle primarily for personal, family, or household use.

54.     Passenger safety and reliability were important factors in Plaintiff Wallace's decision to purchase his vehicle. Before making their purchase, Plaintiff Wallace researched the 2019 Mazda6 online and viewed Mazda commercials, as well as the Mazda and dealership websites advertising the vehicle. At the dealership, Plaintiff Wallace also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle and the

vehicle's brochure. Plaintiff Wallace also discussed the maintenance and reliability of the vehicle with dealership personnel, who made no reference to the Defect.  Plaintiff Wallace believed that the 2018 Mazda6 would be a safe and reliable vehicle.

55.     Mazda's omissions were material to Plaintiff. Had Mazda disclosed their knowledge of the Engine Coolant Defect before he purchased their vehicle, Plaintiff Wallace would have seen and been aware of the disclosures. Furthermore, had he known of the Engine Coolant Defect, Plaintiff Wallace would not have purchased his vehicle.

56.     In December 2019, when the vehicle had less than 60,000 miles on the odometer, Plaintiff Wallace took to the vehicle to the dealership and complained about a coolant leak. The dealership replacement the coolant reservoir.

57.     On or around April 6, 2024, with approximately 62,000 miles on the odometer, Plaintiff Wallace took his vehicle to Team Gillman Mazda, an authorized Mazda dealership located in Houston, Texas, for routine service. The technician inspected his vehicle and found another coolant leak, with coolant leaking externally from the cylinder head due to a small crack between cylinders two and three.   The technician replaced the cylinder head assembly and Plaintiff Wallace paid $5,618.87 for the repair.

58.     As a result of the Engine Coolant Defect, Plaintiff Wallace has lost confidence in the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Wallace will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although he would like to do so.

59.     At all times, Plaintiff Wallace, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Calen and Tiffany Regnier**

60.     Plaintiff Plaintiffs Calen and Tiffany Regnier are Washington citizens, residing in Stanwood, Washington.

61.     On or around April 29, 2018, Plaintiffs Regnier purchased a new 2018 CX-9 Mazda, odometer from a Mazda-authorized dealership, Doug's Lynnwood Mazda Hyundai, located in Edmonds, Washington.

62.     Plaintiffs Regnier purchased their vehicle primarily for personal, family, or household use.

63.     Passenger safety and reliability were important factors in Plaintiffs Regniers' decision to purchase their vehicle. Before making their purchase, Plaintiffs Regnier researched the 2018 Mazda CX-9 online, reviewing both Mazda's website and specific vehicle information on the dealership's website, including the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. At the dealership, Plaintiffs Regnier also discussed the safety of the vehicle with dealership personnel, who made no reference to the Defect but instead assured them that the vehicle was safe. Plaintiffs believed that the 2018 Mazda CX-9 would be a safe and reliable vehicle.

64.     Mazda's omissions were material to Plaintiffs. Had Mazda disclosed their knowledge of the Engine Coolant Defect before they purchased their vehicle, Plaintiffs Regnier would have seen and been aware of the disclosures. Furthermore, had they known of the Engine Coolant Defect, Plaintiffs Regnier would not have purchased their vehicle.

65.     In or around April 2024, Plaintiffs Regnier began experiencing difficulties with their Class Vehicle's engine coolant. Specifically, the engine coolant began leaking resulting in the vehicle overheating, as shown by the indicator on the dashboard.  Plaintiffs Regnier are afraid to drive the vehicle due to the vehicle overheating and potentially leaving her stranded.

66.     On or around April 7, 2024, Plaintiff Tiffany Regnier was driving the

vehicle with her children as passengers when the heater stopped working and the vehicle's engine began to overheat.  She also saw that there was coolant leaking from the back side of the engine.  On or about April 9, 2024, Plaintiffs took their vehicle to Mazda of Everett, an authorized Mazda dealership located in Everett, Washington, for diagnosis and repair.  The technician at the dealership also observed the leaking coolant and found Diagnostic Trouble Code P111A set in the powertrain control module, indicating that the engine had overheated to such a degree that it was permanently damaged.

67.     The dealership consulted MNAO's guidelines, particularly a Technical Service Bulletin published by MNAO, which indicated that the engine would have to be replaced. Plaintiffs Regnier ultimately paid $6,410.11 for the engine to be replaced in their vehicle.

68.     As a result of the Engine Coolant Defect, Plaintiffs Regnier have lost confidence in the ability of their Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiffs Regnier will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although they would like to do so.

69.     At all times, Plaintiffs Calen and Tiffany Regnier, like all Class Members, have driven their vehicle in a manner both foreseeable and in which it was intended to be used.

**Defendants**

70.     Defendant Mazda Motor America, Inc. ("MNAO") d/b/a Mazda North American Operations is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. MNAO is headquartered in Irvine, California and is a wholly owned subsidiary of Mazda Motor Company ("MMC").

71.     MNAO is responsible for sales, marketing, service, distribution,

import and export of Hyundai branded products, including vehicles and parts, in the United States. MNAO is also the warrantor and distributor of Mazda vehicles, including the Class Vehicles, throughout the United States.

72.   In order to sell vehicles to the general public, MNAO enters into agreements with authorized dealerships who engage in retail sales with consumers such as Plaintiffs.  In return for the exclusive right to sell new Mazda branded vehicles, authorized dealerships are also permitted to service and repair these vehicles under the warranties MNAO provides directly to consumers who purchased new vehicles from the authorized dealerships.  All service and repair at an authorized dealership is completed according to Mazda instructions, issued through service manuals, TSBs, and other documents.  Per the agreements between MNAO and the authorized dealers, consumers such Plaintiffs are able to receive services under MNAO's issued warranty at dealer locations that are convenient to them.  These agreements provide MNAO with a significant amount of control over the actions of the authorized dealerships.  For example, MNAO employees are appointed as managers for particular regions of the United States and their responsibilities include managing the day-to-day operations of the dealerships located within their regions.  MNAO also advertises its close relationship with its authorized dealerships on its website, stating that it "oversees the sales, marketing, parts and customer service support of Mazda vehicles in the United Sates and Mexico through nearly 700 dealers."[2]

73.   MNAO is MMC's designated agent with regards to MMC's responsibility as an automobile manufacturer under federal motor vehicle laws and is responsible for liaising, communicating, and cooperating with the National Highway Traffic Safety Administration ("NHTSA") for the purposes of monitoring safety complaints, investigating automobile defects, and conducting

[2] See, e.g., https://news.mazdausa.com/2016-12-12-mazdas-turbocharged-skyactiv-engine-wins-2017-wards-10-best-engines-award

recalls.

74.     Discovery will show that MNAO also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional material relating to the Mazda Class Vehicles.

75.     Defendant Mazda Motor Company is a Japanese corporation found in 1920 under the laws of Japan and headquartered in Fuchu, Hiroshima, Japan.

76.     MMC designs, engineers, manufactures, tests, markets, supplies, sells, warrants, and distributes Mazda-branded vehicles and parts for those vehicles worldwide, including in the United States. MMC is the parent corporation of MNAO, as well as all world-wide Mazda manufacturing facilities.  MMC provides all the technical information for the purposes of manufacturing, servicing, and repairing the Class Vehicles worldwide, including in the United States.

77.     Discovery will show that the decision to found MNAO in California and register it as a California corporation was made by MMC.

78.     Discovery will show that the relationship between MNAO and MMC is governed by an agreement that gives MMC the right to control nearly every aspect of MNAO's operations—including sales, marketing management policies, technical information, servicing instructions, governance policies, pricing, and warranty terms.

79.     Defendants, through their various entities, design, manufacture, market, distribute, service, repair, sell and lease Mazda-brand passenger vehicles, including the Class Vehicles, nationwide and in California, Texas, Florida, and Ohio.

80.     Defendants also worked together on the drafting and distribution of all advertising materials and technical bullets regarding the Class Vehicles to authorized dealers, as well as in training Mazda-dealer technicians in the correct procedures to maintain, service, and repair Mazda vehicles.

81.    At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in California and throughout the United States.

### III.    JURISDICTION

82.    This is a class action. This action is properly before this Court and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state than MNAO and MMC, the number of proposed class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

83.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding.  Further, this Court may also exercise supplemental jurisdictions over Plaintiffs' Magnusson-Moss Warranty Act claims.

84.    This Court has personal jurisdiction over MNAO because it is incorporated in the State of California; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in California; and otherwise intentionally avails itself of the markets within California through promotion, sale, marketing and distribution of its vehicles, which renders the exercise of jurisdiction by this Court proper and necessary as Mazda is "at home" in California.

85.    This Court has personal jurisdiction over MMC because it maintains sufficient minimum contacts in California, conducts business frequently in California by selling Mazda-branded vehicles and car parts in California, transmits and mails technical information about the vehicles and their components to

MNAO and other contacts in California, and otherwise intentionally avails itself of the markets within California through promotion, sale, marketing, and distribution of its vehicles, which renders the exercise by this Court proper and necessary.

86.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). A substantial part of the events or omissions giving rise to the claims occurred in this District, MNAO is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a), MNAO is incorporated here, and Defendants are subject to personal jurisdiction here by conducting business within the State of California.

## IV.   FACTUAL ALLEGATIONS

### A.   BACKGROUND OF THE ENGINE AND COOLANT SYSTEM

87.     Mazda manufactured and sold the Class Vehicles with defective engines and then failed to disclose the Defect for years, concealing the true nature of the engines and vehicles from consumers who—unbeknownst to them—were driving vehicles that had a serious safety-related defect because their engines could stall, fail, and/or burst into flames.

88.     Mazda designed and manufactured the Class Vehicles, including their engines, and then imported, distributed, marketed, warranty and sold the Class Vehicles in the United States. Mazda also provides service and maintenance for the Class Vehicles through its extensive network of authorized dealers and service providers nationwide, distributing technical information drafted jointly by MNAO and MMC. Mazda has sold, directly or indirectly, through dealers and other retail outlets, millions of Class Vehicles in California, Florida, Ohio, Oregon, and Texas and nationwide. The United States is Mazda's largest market and MMC reported revenues of $30.15 billion, $28.7 billion, $32.77 billion, $32.11 billion and $31.47 billion for each of the years that the Class Vehicles were being sold as new cars via

authorized dealerships, and at least $25.5 billion for each subsequent year through 2023.

89. Mazda developed the first SKYACTIV engine prior to 2010, with the engine first appearing in Mazda vehicles in the 2011 model year.  The SKYACTIV-G models of the engine was first seen in prototype testing in the later half of 2010.[3] This family of engines are direct injection internal combustion engines, meaning that the fuel, or gas, is directly inserted into the engine's combustion chambers with high pressure (*i.e.,* atomized into a fine mist). As it is injected, the fuel is mixed with compressed air and ignited by the spark plug. The force generated by the combustion is transferred via the crankshaft to the rest of the vehicle, including the axles. Each cylinder of an engine is its own small combustion chamber, separate from the other cylinders.

90. All internal combustion engines require the combustion chambers to be properly sealed, to both ensure that the force of the combustion does not leak out, leading to a waste of power, and to prevent unwanted materials from getting inside the combustion chambers.  In the Class Vehicle engines, as with nearly all internal combustion engines, the combustion chambers are topped with a cylinder head, *i.e.*, a lid. The engine block, which houses the lower part of the cylinders, is first fitted with a gasket, called the head gasket, and then the cylinder head is seated on that gasket and bolted into place to provide an air-tight seal.  The cylinder head, in addition to sealing the combustion chambers, also houses other critical parts of an engine, including the intake and exhaust valves, the spark plugs, and coolant passages.

91. Such engines generate large amounts of heat as a result of the combustion reaction, as well as from the friction of moving parts like the piston, in addition to force. While engine oil is used to lubricate the moving parts to reduce

---

[3] https://www.autoblog.com/2010/09/01/report-prototype-mazda3-with-2-0l-sky-g-engine-gets-30-40-mpg/

friction, internal combustion engines are also dependent on cooling systems with coolant to prevent the engine and its components from getting too hot. When engines get too hot, the engine blocks, cylinder heads, and other components can warp out of shape, reducing power, causing engine failure, and causing the engine to burst into flame.  As a result, a cooling system, which circulates coolant through the engine block and cylinder head via coolant passages, is necessary to counteract the heat produced by the combustion reaction.

92.    The SKYACTIV-G 2.5T engine (also known internally at Mazda as PY-VPTS), like all SKYACTIV engines, is all-aluminum.  Automakers like Mazda select aluminum because of its mix of strength, high thermal conductivity, corrosion resistance, and ability to be easily shaped by machines (*i.e.*, cast into engine blocks). In particular, aluminum engine components allow the engine to reach optimum operating temperature faster, compared to iron, and also transfer more heat away towards the engine coolant, which prevents the engine from getting too hot.  If the cooling system does not work properly, aluminum engine components will warp.

93.    A properly functioning cooling system is especially critical in the SKYACTIV-G 2.5T. Unlike other turbo-charged engines, "Mazda developed a cooled exhaust gas recirculation (EGR) system that the engine could run at a high 10.5:1 compression ratio without needing to dump fuel into its cylinders for cooling, commonly known as enrichment."[4] This module cools exhaust gas that recirculates, thus reducing internal heat and prevent damage to the engine.[5]  This EGR system takes the exhaust fumes collected by the exhaust manifold and cools the gases before directing them towards the turbocharger.

94.    Mazda also uses a standard cooling system, which circulates coolant through the coolant passages in the engine block and cylinder head to keep the

---

[4] *See* https://news.mazdausa.com/2016-12-12-mazdas-turbocharged-skyactiv-engine-wins-2017-wards-10-best-engines-award

[5] *See* https://www.motortrend.com/news/deep-dive-inside-the-mazda-skyactiv-2-5t-turbo-engine/

engine from overheating.  However, the SKYACTIV-G 2.5T has latent design, workmanship, and/or manufacturing defects which undermine the structural integrity of the engine blocks around the cylinder heads and exhaust manifold joint. In particular, the seal between the cylinder head and the engine block is compromised and the cylinder head, the block, or other engine components crack.

95.    The Defect can cause engine coolant leakage which results in the engine overheating and catastrophic engine failure.  The Defect can also cause coolant to enter the combustion chamber in sufficient quantities to cause "hydro-lock," in which fluid stops the pistons from achieving the correct air compression. Coolant also mixes the fuel and air, which would otherwise be burned during the combustion process.

96.    A loss of coolant, whether into the combustion chamber or not, will eventually cause the engine to overheat as the cooling system cannot function properly without sufficient coolant.  Additionally, when coolant does enter the combustion chamber, consumers may see white smoke from the exhaust, a product of burned coolant; experience engine misfires, rough idling, and poor fuel and engine performance as the combustion process is disrupted; and damage the engine, including the pistons, piston rings and cylinders.

97.    These issues are discoverable in quality-control inspections and pre-production testing of components and engine manufacture. Such inspections and testing are routine, to ensure that manufactured pieces meet design specifications including load and stress tolerances. Further, the SKYACTIV-G 2.5T was first introduced in the CX-9 in the 2016 model year and testing of these engines began years earlier, as new engines are put through even more rigorous testing.  Despite this, Mazda has failed to prevent defective SKYACTIV-G 2.5T engines from being installed in the Class Vehicles.

98.    Discovery will show that SKYACTIV-G 2.5T engines in the Class Vehicles are subject to the Defect and its associated safety risks, namely coolant

leakage, overheating, stalling, engine misfires, premature engine failures, and, in extreme cases, engine fires, that result when driving.  Further, despite Mazda's longstanding knowledge of the Defect, it has failed to recall the Class Vehicles, repair the Class Vehicles, or even warn Class Members of the safety risks inherent in their Class Vehicles.

### B.   MAZDA'S WARRANTIES

99.   Mazda provided all purchasers or lessees of the Class Vehicles with a New Vehicle Limited Warranty ("NVLW") and Powertrain Limited Warranty ("PTW").[6]  The terms of these warranties are non-negotiable and Mazda exercises sole authority in determining whether and to what extent a particular repair is covered under the warranties it offers.

100.   Moreover, although Mazda offers a single type of extended warranty, the Mazda Extended Confidence Warranty, which merely extends the durational limits for a fee of thousands of dollars, no other terms are changed, leaving Mazda the sole arbiter of whether it will honor the warranty.  In particular, Mazda may decide that a defect is a "design defect" not covered under the warranties it provides, extended or otherwise, and thus not provide warranty coverage.

101.   Further, Mazda's authorized dealerships also sell extended warranties from third-party suppliers.  However, those warranties exclude manufacturer's defects, including those like the Defect.

102.   Mazda's warranty booklet informs consumers that the warranty is offered by both MNAO and MMC.

---

[6] https://www.mazdausa.com/owners/warranty

CLASS ACTION COMPLAINT

## AN IMPORTANT MESSAGE FROM MAZDA

We thank you very much for choosing Mazda. We at Mazda design and build vehicles with complete customer satisfaction in mind. From the moment you get behind the wheel of your new Mazda, you'll notice how good it feels. A feeling you'll appreciate for as long as you own your Mazda.

You'll also be pleased to know how strongly we stand behind every Mazda Vehicle. The New Vehicle Limited Warranty and the Powertrain Limited Warranty described in this booklet is one of the finest available.

Together with your Owner's Manual, this warranty booklet details the operating procedures and intervals between maintenance that we recommend you follow to maximize the performance of your Mazda.

In addition, your authorized Mazda Dealer will take care of all your service needs using Genuine Mazda Parts. They'll do all they can to ensure that your Mazda Vehicle continues to exceed all your expectations.

At Mazda, it's not enough to sell vehicles that look impressive in the showroom. We're committed to making sure you enjoy your Mazda for years to come.

**Mazda Motor Corporation**
**and**
**Mazda North American Operations**

103. The NVLW for the Class Vehicles stated, in relevant part:

1. What is Covered

The New Vehicle Limited Warranty period is 36 months or 36,000 miles whichever comes first. This Limited Warranty period begins on the Date of First Service. "Date of First Service" means the first date the Mazda Vehicle is delivered to the first retail purchaser, is leased or is placed into service as a company vehicle use (e.g., as a demonstrator, rental or fleet vehicle), whichever is earliest. This Limited Warranty does not mean that each Mazda vehicle is defect free. For this reason, Mazda provides this Limited Warranty in order to remedy during the warranty period any such defects in materials and workmanship of all parts and components supplied by Mazda subject to the exclusions indicated under "Exceptions" and "What is Not Covered". The vehicle must be brought to an authorized Mazda dealer for all warranty service. The authorized Mazda dealer will without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts. This transferable Limited Warranty is included with all new Mazda vehicles sold in the

United States.[7]

104.   The PLW for the Class Vehicles specifically covers the engine[8] and stated, in relevant part:

> 1.  What is Covered
>
> The Powertrain Limited Warranty period is 60 months or 60,000 miles whichever comes first. This Limited Warranty period begins on the Date of First Service. "Date of First Service" means the first date the Mazda Vehicle is delivered to the first retail purchaser, is leased or is placed into service as a company vehicle use (e.g., as a demonstrator, rental or fleet vehicle), whichever is earliest. This Limited Warranty does not mean that each Mazda vehicle is defect free. For this reason, Mazda provides this Limited Warranty in order to remedy during the warranty period any such defects in materials and workmanship of the Powertrain components supplied by Mazda subject to the exclusions indicated under "What is Not Covered". The vehicle must be brought to an authorized Mazda dealer for all warranty service. The authorized Mazda dealer will without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts. This transferable Limited Warranty is included with all new Mazda vehicles sold in the United States. Mail the "Subsequent Ownership Notification" attached to the end of the booklet to your Mazda Importer/Distributor.[9]

A.     **Mazda's Omissions and Misrepresentations Regarding the Class Vehicles**

105.   Notwithstanding Mazda's knowledge of the Defect, as more specifically explained herein, Mazda, through media outlets including Mazda

---

[7]https://www.mazdausa.com/siteassets/pdf/owners-optimized/optimized-warranty-booklet/2022-warranty-booklet.pdf

[8] Specifically, the PLW covers the following engine components: cylinder block, cylinder head, and all internal lubricated parts including pistons, timing gears, timing chain/belt and tensioner, timing chain/belt front cover and gaskets, flywheel, valve covers and gaskets, oil pan, oil pump, intake manifold and gaskets, exhaust manifold and gaskets, engine mounts, turbocharger housing and all internal parts, supercharger housing and all internal parts, water pump and gaskets, thermostat and gaskets, fuel pump, and seals and gaskets.

[9] *Id.*

media, touted the ability of the Class Vehicles to be driven reliably. The most basic task of any vehicle is to provide transportation, but Mazda failed to disclose the Defect interfered with that purpose in any of its statements about the Class Vehicles, including in brochures, Moroney Stickers, warranty booklets, and owner's manuals. Mazda's statements about the Class Vehicles consistently touted the safety of the vehicles, without mentioning the Defect and its associated safety risks.

106. Defendant MNAO maintains a number of websites that advertise the safety and reliability of the Class Vehicles and their engines. On InsideMazda.com, Mazda touts, "[t]he brand's flagship midsize crossover is elegantly refined while offering the safety and versatility needed to discovery roads not yet taken."[10]

107. Moreover, Mazda's U.S. president, Jeff Guyton, is quoted as saying, "We are committed to providing the most advanced safety technologies in our vehicles, and we continue to challenge ourselves to create unique products and technologies, which provide our customers a confident, relaxing, joyful driving experience."[11]

108. The website also states that the, "CX-9 is equipped with active safety technologies that support safer driving by helping the driver to recognize potential hazards, and pre-crash safety technologies which help to avert collisions or help to reduce their severity in situations where they cannot be avoided." However, there is no mention of the defect in the vehicle's engines.

109. Mazda was similarly boastful about the Mazda6's engines. "Mazda6 has a healthy amount of get-up-and-go to complement its premium driving experience, making for a truly rapid means of getting from Point A to Point B,

---

[10] https://insidemazda.mazdausa.com/the-mazda-way/cars-for-drivers/cx-9-an-invigorating-drive/

[11] *Id.*

whether in a straight line or when the road throws more than a few bends in the middle."[12]

110.   Mazda also specifically markets the Skyactiv engineering in the Class Vehicles, stating, that "[e]very aspect of the vehicle is engineered to maximize driving dynamics and efficiency: from body construction and engine technology, to the chassis and transmission. Offering impressive EPA-estimated MPG ratings. Without compromising performance."[13]

111.   Mazda's press kit for the 2019 Mazda CX-5 stated, "Performance updates and improvements are complemented with a smooth, comfortable feel to help create a premium driving experience. Along with excellent fuel efficiency and a host of proactive safety features, CX-5 can be an essential part of anyone's life."[14]

112.   Similarly, Mazda's press kit for the 2016 Mazda CX-9 stated, "Mazda aims to offer customers a combination of great performance in everyday driving situations and excellent fuel economy," and promised to put "SAFETY AT THE FOREFRONT…with minimal driver distractions."[15]

113.   Mazda repeated this for the 2018 Mazda CX-9, adding that the "Mazda CX-9 aims to reward drivers with an available award-winning SKYACTIV-G 2.5T engine, while satisfying occupants with a feature-rich interior cabin that is pleasing to sight and touch."[16]

114.   Mazda frequently advertises the quality of the SKYACTIV-G 2.5T engine for the 2018 Mazda6, specifically claiming, "Perhaps the greatest upgrade

---

[12] https://insidemazda.mazdausa.com/the-mazda-way/technology/six-ways-technology-improves-mazda6/

[13] https://www.mazdausa.com/why-mazda/skyactiv

[14] https://news.mazdausa.com/download/2019-Mazda-CX-5-Press-Kit_Version-1.pdf

[15] https://insidemazda.mazdausa.com/wp-content/uploads/2016/05/2016-Mazda-CX-9-Press-Kit_Version-2.pdf (emphasis in original)

[16] https://news.mazdausa.com/download/2018-Mazda-CX-9-Press-Kit_Version-2.pdf

of Mazda6 Signature is its source of motivation. Mazda's award-winning, SKYACTIV-G 2.5T gasoline turbo engine returns for its second application. The SKYACTIV-G 2.5T is an engine renowned for its nearly instantaneous, ample torque, courtesy of its Dynamic Pressure Turbo, which accelerates exhaust gasses through a tiny inlet to quickly spool up its turbocharger at low RPM before opening a larger secondary passage to use throughout the engine's operational range. The engine produces torque on par with a 4.0-liter V-8."[17]

115.  Mazda had numerous opportunities to warn prospective purchasers that the Class Vehicles contained a serious defect that could not only affect the ability of the cars to be driven, but also carried a significant associated safety risk of stalls, hesitation, and lurching, increasing the risk of collisions.  But none of the statements that Mazda published and distributed about the vehicles, including brochures, commercials, fact sheets, window stickers, warranty booklets, and owner's manuals contained any mention of the Defect.

116.  Mazda further touts the Class Vehicles and makes other express representations and warranties about their quality, durability, and performance. However, in truth, Mazda knew before selling the Class Vehicles that they suffered from the Defect, but never disclosed that knowledge. Had Mazda disclosed that knowledge, Plaintiffs and Class Members would not have purchased their vehicles or would not have purchased them for the same price.

## C.    MAZDA HAD EXCLUSIVE AND SUPERIOR KNOWLEDGE OF THE DEFECT

117.  Mazda fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiffs and members of the Class the Defect in Class Vehicles, even though Mazda knew or should have known of the design, material, manufacturing, and/or workmanship defects in the Class Vehicles.

---

[17] https://news.mazdausa.com/download/2018-Mazda6-Press-Kit_Version-3.pdf

118.   Knowledge and information regarding the Defect were in the exclusive and superior possession of Mazda and its network of authorized dealerships, and that information was not provided to Plaintiffs and Class Members– either before their purchase or lease of Class Vehicles or when they sought repairs for their vehicles.   Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, previous failures of the engine blocks, cylinder heads, head gaskets, and exhaust manifolds from the same supplier, quality control audits of the engine blocks, cylinder heads, head gaskets, and exhaust manifold components, early consumer complaints made to Mazda's network of dealerships, aggregate warranty data compiled from those dealers, repair orders and parts data received from those dealers, aggregate auto parts stores, consumer, and independent mechanic orders of replacement parts, and consumers complaints to dealers and NHTSA and testing performed in response to those complaint, *inter alia*, Mazda was aware or should have been aware of the Defect in the Class Vehicles.   Instead, Mazda fraudulently concealed the Defect and its associated safety risk from Plaintiffs and members of the Classes.

119.   Mazda knew, or should have known, that the Defect and the associated safety risk was material to owners and lessees of Class Vehicles and was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased Class Vehicles or within applicable warranty periods.

120.   Notwithstanding Mazda's exclusive and superior knowledge of the Defect, Mazda failed to disclose the Defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continues to sell Class Vehicles suffering from the Defect.   Mazda intentionally concealed that the Defect presents a safety risk to consumers, including Plaintiffs and Class Members, and the public.

121.   In fact, before the first Class Vehicle went on sale, Mazda put the vehicle through its extensive pre-production testing to both find flaws and decide

which it would correct prior to sale. Discovery will show that Mazda's decision is often based on whether the issue(s) it discovers is more likely to occur within the warranty period or outside the warranty, *i.e.* whether Mazda or its customers are likely to bear the cost of the repair. Mazda's testing, like all vehicle manufacturers, is divided into three parts: 1) mule testing; 2) early prototype testing; and 3) production line testing.  The first phase, mule testing, takes place after the concept car phase and often precedes years before a vehicle is placed into production.  Early prototype testing takes place approximately a year to two years before production, while production line testing takes places six to nine months prior to production. However, as noted above, Mazda began protype testing the SKYACTIV-G 2.5T engine as early as 2010.[18] Each of these phases is designed to review defects in vehicles, including in any of their components, prior to being mass-produced.

122.  As noted by Mazda, its pre-production testing is significant and includes durability and heat testing.[19] In particular, new Mazda vehicles spend up to thirty (30) days in the climate testing laboratory, where they are "tested for performance and emissions in the most extreme conditions. Cars are driven at speeds of up to 124 mph on the rolling road or simply left under the lamps to examine the effects of heat soak."[20] In fact, Mazda maintains multiple proving grounds, where its vehicles, including the Class Vehicles, were thoroughly tested in various extreme conditions that exceed many real world conditions, including Miyoshi Proving Ground in Hiroshima, Japan where the vehicles underwent durability testing.  Mazda also tested the Class Vehicles at Ford's Arizona Proving Grounds in Wittmann, Arizona for additional hot weather durability testing. This

---

[18] https://www.autoblog.com/2010/09/01/report-prototype-mazda3-with-2-0l-sky-g-engine-gets-30-40-mpg/

[19] *See* https://insidemazda.mazdausa.com/the-mazda-way/cars-for-drivers/extreme-measure/

[20] *Id.*

extensive preproduction testing would have necessarily revealed the Defect to Mazda in 2015, prior to the sale of any of the Class Vehicles.

123. Since the Class Vehicles have been in production, Mazda has also received an overwhelming number of warranty and goodwill repair requests for complaints related to the Defect, including coolant leakage, head gasket and cylinder head replacements, and even total engine replacements.

124. Mazda's knowledge is also demonstrated by the variety of technical service bulletins or other manufacturer communications Mazda issued to its authorized dealerships, but not to the public, that discuss the Defect or symptoms of the Defect, as well as Mazda's attempt to address it. In fact, these bulletins often include the prohibition, "The information and instructions in this bulletin are intended for use by skilled technicians…Customers should not assume this bulletin applies to their vehicle or that their vehicle will develop the described condition."

125. On July 24, 2020, Mazda issue a Service Alert, SA-058/20, stating that "[a] new cylinder head assembly for service parts has been newly established for SKYACTIV-G 2.5…when replacement is needed," for various vehicles including the 2018-2020 Mazda6 cars. This indicates that Mazda actually redesigned the cylinder head in the engine, as a result of their knowledge of the cylinder head's insufficiency. This redesigned cylinder head was installed in subsequent model years, but Mazda did not institute a recall to fix the issues in Class Vehicles. Redesigning, manufacturing, and distributing new cylinder heads, which included valves and vales seats, would have take two years and would have followed several years worth of information suggesting that a redesign was necessary. Any replacement of the cylinder head required new gaskets, including the exhaust manifold gasket. However, per the bulletin, any cylinder head replacement required Mazda explicit authorization.

126. On August 5, 2020, Mazda re-issued Service Alert SA-058/20, to warn dealership technicians to use different warranty and other codes when requesting

and documenting the repair.   Again, any cylinder head replacement required Mazda's explicit authorization.  This service alert was also re-issued on August 20, 2020.

127.   On December 3, 2020, Mazda re-issued Service Alert SA-058/20, to alert dealership technicians that "**DUE TO A SUPPLY ISSUE, CYLINDER HEADS ARE NOT AVAILABLE AT THIS TIME. IF UNDER WARRANTY, PLEASE CONTACT HOTLINE FOR MASH AUTHORIZATION FOR ENGINE REPLACEMENT.**" (emphasis in original).  This indicates that Mazda was unable to keep up with the demand for cylinder head replacements due the Defect.

128.   On October 15, 2021, Mazda issued TSB 01-013/21 entitled "Coolant Leaks at Cylinder Head," applicable to 2019-2020 CX-5 2016-2020 CX-9 vehicles produced prior to June 9, 2020, and 2018-2020 Mazda6 vehicles produced prior to March 25, 2020 with the SKYACTIV-G 2.5T engine p.  Mazda explained, "[s]ome vehicles may have coolant leaks at the cylinder head around the exhaust manifold (as shown below). There may be cracks at the stud bolt hold (1) or at the outside of the exhaust manifold (2).



CLASS ACTION COMPLAINT

The TSB further stated that the "cracks may be caused by: deformation of the exhaust manifold during usage causing unexpected force to certain areas of the cylinder head" or "residual stress generated during production in the cylinder head material may be greater than expected. The external force from the exhaust system when driving over bumps may cause unexpected force to certain areas of the cylinder head."  Technicians were directed to install redesigned exhaust manifold gaskets and cylinder heads, which would reduce force on the cylinder head. Notably, if a diagnostic trouble code P111A was stored in the vehicle's computer, engine overheating was suspected and the TSB was not applicable.  Instead, in that situation, technicians were to diagnose the cause and provide a repair, namely "replacing the partial engine," which required Mazda's explicit approval. This TSB indicates that Mazda had identified the problem years prior, designed a remedy, and instituted the redesign in production in early 2020, but failed to recall the Class Vehicles and failed to inform Class Members that their vehicles had a Defect and associated safety risk.

129.   On December 2, 2021, Mazda re-issued TSB 01-013/21 to clarify that Mazda's explicit approval was not needed for cylinder head replacements.

130.   On June 27, 2022, Mazda re-issued TSB 01-013/21 to update the operation number for CX-9 repairs.  On January 19, 2023, Mazda re-issued the TSB with updated part information.  On February 10, 2023, Mazda re-issued the TSB to clarify that the cracks were outside of the exhaust manifold flange on the cylinder head.

131.   In addition to Mazda's own internal testing, investigation and knowledge of the Defect, customers complained on the NHTSA's website.

132.   Federal law requires automakers like Mazda to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports,

1  customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414,
2  114 Stat.1800 (2000).

3      133.   Automakers have a legal obligation to identify and report emerging
4  safety-related defects to NHTSA under the Early Warning Report requirements.
5  *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints
6  regarding their automobiles as part of their ongoing obligation to identify potential
7  defects in their vehicles, including those which are safety related. *Id*.

8      134.   Consumers may file vehicle safety-related complaints through the
9  NHTSA website, where they are logged and published. The customer complaints
10  are easily sorted by make, model, and year of vehicle. Based on the legal
11  obligations discussed above, Mazda and/or Mazda personnel would review
12  NHTSA's website for complaints. Thus, Mazda knew or should have known of
13  the many complaints about the Defect logged by NHTSA ODI. The content,
14  consistency, and disproportionate number of those complaints alerted, or should
15  have alerted, Mazda to the Defect in as early as 2015.  With respect solely to the
16  Class Vehicles, attached hereto as **Exhibit A,** is a sampling of these complaints
17  filed with the NHTSA for the Class Vehicles, which are available on the NHTSA's
18  website, www.safercar.gov. These excerpts of customer complaints are but a few
19  examples of the many complaints concerning the Defect. Many of the complaints
20  reveal that Mazda, through its network of dealers and repair technicians, had been
21  made aware of the Defect. In addition, the complaints indicate that despite having
22  knowledge of the Defect and even armed with knowledge of the exact vehicles
23  affected, Mazda often refused to diagnose the defect or otherwise attempt to repair
24  it while Class Vehicles were still under warranty.

25      135.   Consumers have also posted extensively on websites dedicated to
26  discussions of Mazda vehicles regarding the Defect in Class Vehicles. Mazda has
27  made the monitoring of consumer complaints as posted on third-party websites a
28  part of their brand and reputational management for at least a decade. Attached

hereto as **Exhibit B** is a sampling of those complaints, indicating that the recall was too narrow and that vehicles produced after the recall still contain the Defect.

### D.   FRAUDULENT CONCEALMENT ALLEGATIONS

136.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mazda responsible for disseminating false and misleading marketing materials and information regarding the Class Vehicles.  Mazda necessarily is in possession of or has access to this information.

137.   Plaintiffs' claims arise out of Mazda's fraudulent concealment of the Defect and the problems the Defect causes, and its representations about the quality, durability, and performance of the Class Vehicles, including their engines.

138.   To the extent that Plaintiffs' claims arise from Mazda's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims.  Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Mazda knew, or was reckless in not knowing, of the Defect; Mazda was under a duty to disclose the Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it, and Mazda never disclosed the Defect to Plaintiffs or the public at any time or place or in any manner, including during Plaintiffs' service appointments at Mazda authorized dealership.

139.   Plaintiffs make the following specific fraud allegations with as much specificity as possible, although they do not have access to information necessarily available only to Mazda:

      a. ***Who***: Mazda actively concealed the Defect from Plaintiffs and Class Members while simultaneously touting the quality, durability and performance of the Class Vehicles and their Engines.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mazda responsible for

1    such decisions.

2    b. **What**: Mazda knew, or was reckless or negligent in not knowing,

3    that the Class Vehicles suffer from the Defect.  Mazda concealed

4    the Defect and made contrary representations about the quality,

5    durability, performance, and other attributes of the Class Vehicles.

6    c. **When**: Mazda concealed material information regarding the Defect

7    at all times and made representations about the quality, durability,

8    and performance of the Class Vehicles, starting no later than 2013,

9    or at the subsequent introduction of certain models of Class

10   Vehicles to the market, continuing through the time of sale/lease,

11   and on an ongoing basis, and continuing to this day.  Mazda has

12   not disclosed the truth about the Defect in the Class Vehicles to

13   anyone outside of Mazda.  Mazda has never taken any action to

14   inform consumers about the true nature of the Defect in Class

15   Vehicles.  And when consumers brought their Class Vehicles to

16   Mazda complaining of the symptoms associated with the Defect,

17   Mazda denied any knowledge of, or responsibility for, the Defect.

18   In particular, Mazda undertook an investigation and redesign of the

19   cylinder heads in Class Vehicles, but at no point informed the Class

20   Members about the Defect.

21   d. **Where**:  Mazda concealed material information regarding the true

22   nature of the Defect in every communication it had with Plaintiffs

23   and Class Members and made contrary representations about the

24   quality, durability, and performance of the Class Vehicles ad their

25   Engines.  Plaintiffs are aware of no document, communication, or

26   other place or thing in which Mazda disclosed the truth about the

27   Defect in the Class Vehicles to anyone outside of Mazda.  Such

28   information is not adequately disclosed in any sales documents,

displays, advertisements, warranties, owner's manual, or on Mazda's website.

e. ***How***: Mazda concealed the Defect from Plaintiffs and Class Members and made representations about the quality and durability of the Class Vehicles. Mazda actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Mazda promised in its marketing materials that the Class Vehicles have qualities that they do not have, and moreover, made representations in its warranties that it knew were false, misleading, and deceptive.

f. ***Why***: Mazda actively concealed material information about the Defect in Class Vehicles, and simultaneously made representations about the quality, durability, and performance of the Class Vehicles and their Engines, for the purpose of inducing Plaintiffs and Class Members to purchase or lease the Class Vehicles, rather than purchasing or leasing competitors' vehicles. Had Mazda disclosed the truth, for example, in its advertisements or other materials or communications, Plaintiffs (and reasonable consumers) would have been aware of the Defect, and would not have bought the Class Vehicles or would have paid less for them.

## F.    MAZDA HAS ACTIVELY CONCEALED THE DEFECT

140.  Despite its knowledge of the Defect in the Class Vehicles, Mazda actively concealed the existence and nature of the Defect from Plaintiffs and Class Members. Specifically, Mazda failed to disclose to or actively concealed from Plaintiffs and Class Members, at and after the time of purchase, lease, or repair, and thereafter:

a. any and all known material defects or material nonconformities of the Class Vehicles, including the Defect;

b. that the Class Vehicles were not in good working order, were defective, and were not fit for their intended purpose; and

c. that the Class Vehicles were defective, even though Mazda learned of the Defect before it placed the Class Vehicles in the stream of commerce.

141.   More troubling, Mazda did not issue any recall and otherwise refuses to acknowledge the Defect, despite redesigning the cylinder head after identifying the problem years earlier.  The bulletins cited above was never released to the public, despite the numerous repairs, a redesign, and reports of symptoms.  Mazda also refuses to acknowledge ongoing complaints made as a result of the Defect, even as a vehicle has been repaired.  Indeed, Mazda has refused to honor its warranty or admit the existence of the Defect after these repairs have taken place.

142.   Further, Mazda re-designed the cylinder head to remedy the Defect, but did not notify current owners or lessees of the re-design or encourage replacement of components with the re-designed parts.

143.   Mazda has also directed its authorized dealerships to inform Plaintiffs and members of the Class that that no repairs are necessary or that driving in this condition is fine, so consumers will delay repairs until after the warranty period has expired.  In this way, Mazda unfairly transfers the cost of repair to Plaintiffs and Class Members and reduces its own recall and warranty costs.

144.   Mazda has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at their dealerships and/or be unable to drive their vehicles for long stretches of time, while they are being constantly repaired.

145.   Moreover, when vehicles are brought to Mazda's dealers for repair, whether covered by warranty or not, Class Members are provided with ineffective

1    repairs in which defective parts are replaced with other defective parts, as
2    experienced by Plaintiffs.

3      146.   As a result, Class Members continue to experience the Defect despite
4 having repairs, as shown by the experiences of Plaintiffs. Because many Class
5 Members, like Plaintiffs, are current owners or lessees who rely on their vehicles
6 on a daily basis, compensation for repairs, related expenses (*e.g.*, towing), and
7 diminution in value is not sufficient. A remedial scheme which also makes
8 available a fix and/or warranty extension is necessary to make Class Members
9 whole.

10      147.   Mazda has not recalled all the Class Vehicles to repair the Defect, has
11 not offered to its customers a free suitable repair or free replacement of parts related
12 to the Defect, under the recall or otherwise, and has not reimbursed all Class
13 Vehicle owners and leaseholders who incurred costs for repairs related to the
14 Defect.

15      148.   Class Members have not received the value for which they bargained
16 when they purchased or leased the Class Vehicles.

17      149.   As a result of the Defect, the value of the Class Vehicles has
18 diminished, including without limitation, the resale value of the Class Vehicles.

19      150.   The existence of the Defect is a material fact that a reasonable
20 consumer would consider when deciding whether to purchase or lease a Class
21 Vehicle. Whether a vehicle's engine is defective, resulting in unexpected
22 overheating, loss of motive power, and stalling, the risk of collision is drastically
23 increased due to the consumer's inability to maintain steering, braking, and speed
24 control, thereby putting consumers, passengers, and bystanders in danger, is a
25 material safety concern. Had Plaintiffs and other Class Members known of the
26 Defect, they would have paid less for the Class Vehicles or would not have
27 purchased or leased them.

28      151.   Reasonable consumers, like Plaintiffs, expect that a vehicle is safe,

will function in a manner that will not pose a safety risk, is free from defects, and will not malfunction while operating the vehicle as it is intended. Plaintiffs and Class Members further expect and assume that Mazda will not sell or lease vehicles with known safety defects, such as the Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.

152.    The Class Vehicles do not function as Mazda intended; no manufacturer intends for a vehicle's engine components to premature fail, resulting to decreased engine performance, loss of power, and eventual catastrophic engine failure.

**E.     MAZDA HAS UNJUSTLY RETAINED A SUBSTANTIAL BENEFIT**

153.    Plaintiffs allege that Mazda unlawfully failed to disclose the alleged Defect to induce them and other putative Class Members to purchase or lease the Class Vehicles.

154.    Plaintiffs further allege that Mazda, thus, engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs' vehicles.

155.    As discussed above, therefore, Plaintiffs allege that Mazda unlawfully induced them to purchase Class Vehicles by concealing and/or omitting a material fact (the Defect) and that Plaintiffs would have paid less for the Class Vehicles, or not purchased them at all, had they known of the Defect.

156.    Accordingly, Mazda's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material concealment and omissions that deceive consumers should be disgorged.

**F.     THE RELATIONSHIP BETWEEN MAZDA AND ITS NETWORK OF AUTHORIZED DEALERSHIPS RELATED TO MAZDA'S WARRANTIES**

157.    In order to sell vehicles to the general public, Mazda enters into

agreements with its nationwide network of authorized dealerships to engage in retail sales with consumers such as Plaintiffs. In return for the exclusive right to sell new, Mazda-branded vehicles, the authorized dealerships are also permitted under these agreements with Mazda to service and repair these vehicles under the warranties Mazda provides directly to consumers who purchased new vehicles from the authorized dealerships.

158.   Accordingly, Mazda's authorized dealerships are Mazda's agents, and the consumers who purchase or lease Mazda vehicles are the third-party beneficiaries of these dealership agreements, which allow the consumers to purchase and service their Mazda vehicles locally. Because Plaintiffs and members of the Class there are third-party beneficiaries of the dealership agreements which create the implied warranty, they may avail themselves of the implied warranty. This is true because third-party beneficiaries to contracts between other parties that create an implied warranty of merchantability may avail themselves of the implied warranty. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010).

159.   Further, Plaintiffs and each of the members of the Class are the intended beneficiaries of Mazda's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles, and they have no rights under the warranty agreements provided by Mazda. Mazda's warranties were designed for and intended to benefit the consumers only. The consumers are the true intended beneficiaries of Mazda's express and implied warranties, and the consumers may therefore avail themselves of those warranties.

160.   Mazda issued the express warranty to the Plaintiffs and the Class Members. Mazda also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. Mazda also are responsible for the content of the Monroney

Stickers on Mazda-branded vehicles. Because Mazda issue the express warranty directly to the consumers, the consumers are in direct privity with Mazda with respect to the warranties.

161.   In promoting, selling, and repairing its defective vehicles, Mazda acts through numerous authorized dealers who act, and represent themselves to the public, as exclusive Mazda representatives and agents. That the dealers act as Mazda's agents is demonstrated by the following facts:

a.  The authorized Mazda dealerships complete all service and repair according to Mazda's instructions, which Mazda issues to its authorized dealerships through service manuals, service bulletins, technical service bulletins, and other documents;

b.  Consumers are able to receive services under Mazda- issued warranties at Mazda's authorized dealerships, and they are able to receive these services because of the agreements between Mazda and the authorized dealers. These agreements provide Mazda with a significant amount of control over the actions of the authorized dealerships;

c.  The warranties provided by Mazda for the defective vehicles direct consumers to take their vehicles to authorized dealerships for repairs or services;

d.  Mazda has provided training and partnered with various technical schools to provide Mazda -specific training for technicians, so that dealerships are able to hire technicians that have completed Mazda -overseen certification course;

e.  Mazda dictates the nature and terms of the purchase contracts entered into between its authorized dealers and consumers;

f.  Mazda controls the way in which its authorized dealers can respond to complaints and inquiries concerning defective vehicles, and the

dealerships are able to perform repairs under warranty only with Mazda's authorization;

g. Mazda has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and the dealers' interaction with the public; and

h. Mazda implemented its express and implied warranties as they relate to the defects alleged herein by instructing authorized Mazda dealerships to address complaints of the Defect by prescribing and implementing the relevant TSBs cited herein.

162. Indeed, Mazda's warranty booklets make it abundantly clear that Mazda's authorized dealerships are Mazda's agents for vehicle sales and service. The booklets, which are plainly written for the consumers, not the dealerships, tell the consumers repeatedly to seek repairs and assistance at its "authorized dealerships."

163. For example, at the outset, Mazda notifies Plaintiffs and Class Members in the warranty booklet that **"[t]he vehicle must be brought to an authorized Mazda dealer for all warranty service**."[21]

164. Mazda's Certified Pre-Owned vehicle program also relies on the authorized dealerships performing a 160-point inspection process before the vehicles can be "certified" and offered for sale. The dealerships perform this certification process, signing the paperwork which then obligates Mazda to provide a 100,000 mile, 7 year, whichever comes first, powertrain warranty to whomever purchases the vehicle.[22] These factory-backed warranties are provided on the authorization of dealership personnel.

---

[21] *See e.g.*, https://www.mazdausa.com/siteassets/pdf/owners-optimized/optimized-warranty-booklet/2022-warranty-booklet.pdf

[22] *See*, https://www.mazdausa.com/certified-pre-owned

165.   Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of Mazda. Plaintiffs and each of the members of the Class have had sufficient direct dealings with either Mazda or their agent dealerships to establish privity of contract between Mazda, on one hand, and Plaintiffs and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranty between Plaintiffs and Mazda.

## G.   TOLLING OF THE STATUTES OF LIMITATIONS

### (a)   Fraudulent Concealment

166.   As previously described, any applicable statute(s) of limitations has been tolled by Mazda's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the nature of the Defect prior to this class action litigation being commenced.

167.   Mazda was and remains under the continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles, and it will require costly repairs, poses a safety concern, and diminished the resale value of the Class Vehicles. As a result of the active concealment by Mazda, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

168.   Mazda has known of the Defect in the Class Vehicles since at least 2019, and has concealed from, or failed to, notify Plaintiffs, Class Members, and the public of the full and complete nature of the Defect, even when directly asked about it by Plaintiffs and Class Members during communications with Mazda, Mazda customer assistance, Mazda dealerships, and Mazda service centers.  Mazda continues to conceal the Defect to this day.

### (b)   Estoppel

169.   Mazda was, and is, under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles.

Mazda actively concealed – and continues to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made representations about the quality and durability of the Vehicles.  Plaintiffs and Class Members reasonably relied upon Mazda's knowing and affirmative representations and/or active concealment of these facts.  Based on the foregoing, Mazda is estopped from relying on any statutes of limitation in defense of this action.

### (c)  Discovery Rule

170.   The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles suffered from the Defect.

171.   However, Plaintiffs and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after the Defect caused their Engines and/or component parts failed.

172.   Even then, Plaintiffs and Class Members had no reason to know that such failures, or the pre-failure symptoms described above, were caused by a defect in the Class Vehicles because of Mazda's active concealment of the Defect.  Not only did Mazda fail to notify Plaintiffs or Class Members about the Defect, Mazda, in fact, denied any knowledge of, or responsibility for, the Defect when directly asked about it.

173.   Thus, Plaintiffs and Class Members were not reasonably able to discover the Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, they discovered that the Defect was causing coolant in the engines of their Vehicles.

### H.   CLASS ACTION ALLEGATIONS

174.   Plaintiffs bring this action pursuant to Rule 23(a), 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and as the following proposed classes:

**Nationwide Class**:
All persons or entities in the United States (including its

territories and the District of Columbia) that purchased or leased a Class Vehicle.

**Florida Sub-Class**:
All persons or entities that purchased or leased a Class Vehicle within Florida.

**Ohio Sub-Class**:
All persons or entities that purchased or leased a Class Vehicle within Ohio.

**Oregon Sub-Class**:
All persons or entities that purchased or leased a Class Vehicle within Oregon.

**Texas Sub-Class**:
All persons or entities that purchased or leased a Class Vehicle within Texas.

**Washington Sub-Class**:
All persons or entities that purchased or leased a Class Vehicle within Washington.

175. Excluded from the Class are Mazda; its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Mazda; Mazda's dealers; Class Counsel and their employees; the judicial officers and their immediate family members and associated court staff assigned to this case; and all persons within the third degree of relationship to any such persons.

176. Certification of Plaintiffs' claims for Class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

177. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

178. **Numerosity**. Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough that such joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all

parties and to the Court. The Class Members are readily identifiable from information and records in Mazda's possession, custody, and/or control as well as from records kept by the Department of Motor Vehicles.

179. **Commonality and Predominance**. Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, but not limited to the following:

a. Whether Class Vehicles suffer from the Defect;

b. Whether Mazda engaged in the conduct alleged herein;

c. Whether the Defect constituted an unreasonable safety risk;

d. Whether the Defect constitutes a material fact;

e. Whether Mazda designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

f. Whether Mazda designed, manufactured, marketed, and distributed Class Vehicles with the Defect;

g. Whether Mazda has a duty to disclose the defective nature of the Class Vehicle engines to Plaintiffs and Class Members;

h. Whether Plaintiffs and Class Members overpaid for their Class Vehicles and/or did not receive the benefit of the bargain;

i. Whether Mazda should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective cylinder heads, and related components;

j. Whether Plaintiffs and Class Members are entitled to damages and other monetary relief and, if so, in what amount;

k. Whether Mazda's alleged conduct constitutes the use or employment of an unconscionable commercial practice,

deception, fraud, false pretense, false promise, and misrepresentation within the meaning of the applicable state consumer fraud statutes;

l.  Whether Mazda has been unjustly enriched under applicable state laws;

m.  Whether Mazda has violated its express warranties to Plaintiffs and Class Members;

n.  Whether Mazda breached the implied warranty or merchantability pursuant to the laws governing each of the Sub-Class jurisdictions;

o.  Whether Mazda violated the Florida Deceptive and Unfair Trade Practices Act, § 501.201, *et seq*., ("FDUTPA"), the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 ("Ohio CSPA"), the Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.608 ("Oregon UTPA"), the Texas Deceptive Trade Practices Act-Consumer Protection Act, § 17.41, *et seq*., ("Texas DTPA"), and the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.* ("Washington CPA")

p.  Whether Mazda actively concealed the Defect in order to maximize profits to the detriment of Plaintiffs and Class Members; and

q.  Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

180.  **Typicality**.  Plaintiffs' claims are typical of the claims of the Class and Sub-Classes in the Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Mazda. The

representative Plaintiffs, like all Class Members, have been damaged by Mazda's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective engine.    Rule 23(a)(3) of the Federal Rules of Civil Procedure:  Plaintiffs' claims are typical of the other Class Members' claims because, among other things, all Class Members were comparably injured through Mazda's wrongful conduct as described above.  All claims seek recovery on the same legal theories and are based upon Mazda's common course of conduct.

181.   **Adequacy**.  Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

182.   **Declaratory Relief**.   Rule 23(b)(2) of the Federal Rules of Civil Procedure:  Mazda has acted or refused to act on grounds generally applicable to Plaintiffs and Class Members, thereby making appropriate declaratory relief, with respect to each Class as a whole.

183.   **Superiority**.  Rule 23(b)(3) of the Federal Rules of Civil Procedure: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.   The damages or other financial detriment suffered by Plaintiffs and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Mazda, so it would be impracticable for Class Members to individually seek redress for Mazda's wrongful conduct.  Even if Class Members could afford individual litigation, the court system could not.   Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides

the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## I.   CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)**
**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Mazda)**

184.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

185.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against Mazda.

186.   Mazda provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain.

187.   The engine and its component parts were manufactured and/or installed in the Class Vehicles by Mazda and are covered by the express warranty.

188.   In a section entitled "New Vehicle Limited Warranty," Mazda's express warranty, the "New Vehicle Limited Warranty," provides, in relevant part, that Mazda will provide warranty services when the vehicle is brought to an authorized Mazda dealer The authorized Mazda dealer will without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.

189.   Mazda breached the express warranties by selling and leasing Class Vehicles with engines that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the engine and its component parts. Mazda have failed to "repair" the defects as alleged herein.

190.   Plaintiffs were not required to notify Mazda of the breach or were not required to do so because affording Mazda a reasonable opportunity to cure its breach of written warranty would have been futile. Mazda was also on notice of

the defect from complaints and service requests they received from Class Members, from repairs and/or replacements of the Engine, and from other internal sources.

191.   Plaintiffs also provided notice to Mazda of its breach of warranty claims under the MMWA by letters dated May 3, 2024 and May 9, 2024.

192.   As a direct and proximate cause of Mazda's breach, Plaintiffs and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiffs and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

193.   Plaintiffs and the other Class Members are entitled to legal and equitable relief against Mazda, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**SECOND CAUSE OF ACTION**
**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)**
**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Mazda)**

194.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

195.   Plaintiffs bring this cause of action on behalf of themselves and the Class against Mazda.

196.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

197.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

198.   Mazda are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

199.   Mazda impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other

things: (i) a warranty that the Class Vehicles and their Engines manufactured, supplied, distributed, and/or sold by Mazda would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Engines would be fit for their intended use while the Class Vehicles were being operated.

200. Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design and materials of their Engines.

201. Mazda's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

202. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

203. Mazda has been afforded a reasonable opportunity to cure their breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and Engine repair.

204. As a direct and proximate cause of Mazda's breach of implied warranties, Plaintiffs and Class Members sustained and incurred damages and other losses in an amount to be determined at trial. Mazda's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

205. As a result of Mazda's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

206. Plaintiffs also provided notice to Mazda of its breach of warranty claims under the MMWA by letters dated May 3, 2024 and May 9, 2024.

1
2

**THIRD CAUSE OF ACTION**
**(For Fraud by Omission or Fraudulent Concealment)**
**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Mazda)**

3      207.   Plaintiffs incorporate by reference the allegations contained in the

4   preceding paragraphs of this Complaint.

5      208.   Plaintiffs bring this cause of action on behalf of themselves and the

6   Class or, alternatively, on behalf of all Sub-Classes against Mazda.

7      209.   Mazda knew that the Class Vehicles suffered from an inherent Engine

8   Coolant Defect, were defectively designed and/or manufactured, and were not

9   suitable for their intended use.

10      210.   Mazda concealed from and failed to disclose to Plaintiffs and Class

11   Members the defective nature of the Class Vehicles.

12      211.   Mazda was under a duty to Plaintiffs and Class Members to disclose

13   the defective nature of the Class Vehicles because:

14          a. Mazda were in a superior position to know the true state of facts

15             about the safety defect contained in the Class Vehicles;

16          b. The omitted facts were material because they directly impact the

17             safety of the Class Vehicles;

18          c. Mazda knew the omitted facts regarding the Engine Coolant Defect

19             were not known to or reasonably discoverable by Plaintiffs and

20             Class Members;

21          d. Mazda made partial disclosures about the quality of the Class

22             Vehicles without revealing their true defective nature; and,

23          e. Mazda actively concealed the defective nature of the Class

24             Vehicles from Plaintiffs and Class Members.

25      212.   The facts concealed or not disclosed by Mazda to Plaintiffs and the

26   other Class Members are material in that a reasonable person would have

27   considered them to be important in deciding whether to purchase or lease Mazda's

28   Class Vehicles or pay a lesser price for them. Whether a vehicle's Engine is

defective, causing the vehicle to stall, stutter, hesitate, experience engine failure, or causing an engine fire, is a material safety concern. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

213.    Mazda concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Mazda's omissions to their detriment. This detriment is evident from Plaintiffs and Class Members' purchase or lease of Mazda's defective Class Vehicles.

214.    Mazda continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Mazda continues to cover up and conceal the true nature of the problem today.

215.    As a direct and proximate result of Mazda's misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the defective Vehicles and recover damages.

216.    Mazda's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being to enrich Mazda. Mazda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof

**FOURTH CAUSE OF ACTION**
**(For Unjust Enrichment)**
**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Mazda)**

217.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

218. Plaintiffs bring this cause of action on behalf of themselves and the Class or, alternatively, on behalf of all Sub-Classes against Mazda.

219. Mazda has received and retained a benefit from Plaintiffs and the members of the Class, and inequity has resulted.

220. As a direct and proximate result of Mazda's failure to disclose known defects, Mazda have profited through the sale and lease of the Class Vehicles, the value of which was artificially inflated by Mazda's concealment of and omissions regarding the Defect. Mazda charged higher prices for the vehicles than the vehicles' true value, and Plaintiffs and Class Members thus overpaid for the Class Vehicles. Although these vehicles are purchased through Mazda's authorized dealers and distributors, the money from the vehicle sales flows directly back to Mazda.

221. Additionally, as a direct and proximate result of Mazda's failure to disclose known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Mazda.

222. Mazda has been unjustly enriched due to the known defects in the Class Vehicles through the use of money paid that earned interest or otherwise added to Mazda's profits when said money should have remained with Plaintiffs and Class Members.

223. Plaintiffs and Class Members were not aware of the true facts regarding the Defect in the Class Vehicles and did not benefit from Mazda's unjust conduct.

224. As a result of the Mazda's unjust enrichment, Plaintiffs and Class Members have suffered damages.

225. Plaintiffs do not seek restitution under their unjust enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Mazda obtained as a result of its unjust conduct.

226. Additionally, Plaintiffs seek injunctive relief to compel Mazda to offer, under warranty, remediation solutions that Mazda identifies. Plaintiffs also seek injunctive relief enjoining Mazda from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Mazda from selling the Class Vehicles with the misleading information; compelling Mazda to provide Class Members with a replacement components that do not contain the defects alleged herein; and/or compelling Mazda to reform its warranties, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranties have been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**Claims on Behalf of the Florida Sub-Class**

### FIFTH CAUSE OF ACTION
### Violations of the Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201-.213
### (On Behalf of the Florida Sub-Class)

227. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

228. Plaintiff Sandra Yankow ("Florida Plaintiff") brings this cause of action individually and on behalf of the Florida Sub-Class.

229. Mazda's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Florida Deceptive and Unfair Trade Practices Act, § 501.201, *et seq*., ("FDUTPA").

230. At all relevant times, Florida Plaintiff and members of the Florida Sub-Class were "consumers" within the meaning of the FDUTPA. F.S.A. § 501.203(7).

231. Mazda's conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA F.S.A. § 501.203(8).

232. Mazda participated in and engaged in deceptive business or trade practices prohibited by the FDUTPA by failing to disclose and actively concealing

that the Class Vehicles contained the Engine Coolant Defect, by marketing their Class Vehicles as safe and of high quality, and by presenting themselves as reputable manufacturers that valued safety and stood behind their vehicles after they were sold.

233.    Mazda knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles by, among other things, failing to disclose the Engine Coolant Defect; concealing the Engine Coolant Defect; promoting and selling or leasing Class Vehicles they knew were defective, including by marketing their vehicles as safe, reliable, easily operable, efficient, and of high quality; presenting themselves as reputable manufacturers that valued safety, reliability, performance and efficiency, and stood behind their vehicles after they were sold; failing to make repairs or making repairs and providing replacements that caused Florida Plaintiff and the Florida Sub-Class Members to experience repeated instances of failure, rendering the New Vehicle Limited Warranty useless; and minimizing the scope and severity of the problems with the Class Vehicles, refusing to acknowledge that they are defective, and failing to provide adequate relief to consumers. Mazda misrepresented and omitted such material facts with the intent to mislead Florida Plaintiff and the Florida Sub-Class Members about the true nature of the Class Vehicles.

234.    Mazda systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Engine Coolant Defect in the course of its business.

235.    Mazda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

236.    Mazda's unfair and deceptive acts or practices occurred repeatedly in

Mazda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

237.   Mazda knew that the Class Vehicles and their engines suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

238.   Mazda knew or should have known that their conduct violated the FDUTPA.

239.   Florida Plaintiff and the Florida Sub-Class Members reasonably relied on Mazda's misrepresentations and omissions of material facts in their advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

240.   Florida Plaintiff and the Florida Sub-Class Members had no way of discerning that Mazda's misrepresentations were false and misleading when they acquired their Class Vehicles because Florida Plaintiff and the Florida Sub-Class Members did not have access to Mazda's exclusive and superior knowledge about the Class Vehicles' design and the Engine Coolant Defect.

241.   Had Florida Plaintiff and the Florida Sub-Class Members known that the Class Vehicles would contain and/or exhibit the Engine Coolant Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them. Plaintiff did not receive the benefit of their bargain as a result of Mazda's misconduct.

242.   Mazda owed Florida Plaintiff and the Florida Sub-Class Members a duty to disclose the truth about the Engine Coolant Defect because Mazda:

a.   possessed exclusive and superior knowledge of the design and manufacture of the Class Vehicles and the Engine Coolant Defect;

b.   intentionally concealed the foregoing from Florida Plaintiff and the Florida Sub-Class Members; and/or

c.   made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding material facts from

Florida Plaintiff and the Florida Sub-Class Members that contradicted these representations.

243.    Due to Mazda's specific and superior knowledge that the Engines in the Class Vehicles will fail due to the Engine Coolant Defect, their false representations regarding the increased reliability and durability of the Class Vehicles, and reliance by Florida Plaintiff and the Florida Sub-Class Members on these material representations, Mazda had a duty to disclose to Class Members that the Engine Coolant Defect will cause engine failure in Class Vehicles, that Class Vehicles do not have the expected durability, reliability, and/or safety over other vehicles or of their predecessor engines, that failure of the Engines will cause damage to Class Vehicle, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Florida Plaintiff and the Florida Sub-Class Members, Mazda had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Florida Plaintiff and the Florida Sub-Class Members. Longevity, durability, performance, and safety are material concerns to Mazda consumers. Mazda represented to Florida Plaintiff and the Florida Sub-Class Members that they were purchasing or leasing vehicles that were durable, reliable, safe, efficient, of high quality, and containing engines of advanced and superior characteristics and technology as alleged throughout this Complaint, when in fact it is only a matter of time before the engines fail due to the Engine Coolant Defect.

244.    Florida Plaintiff and the Florida Sub-Class Members suffered injury in fact to a legally protected interest. As a result of Mazda's conduct, Florida Plaintiff and the Florida Sub-Class Members were harmed and suffered actual damages in the form of the costs of diagnosis and repair of their vehicles, and the diminished value of their vehicles.

245.    As a direct and proximate result of Mazda's unfair or deceptive acts

or practices, Florida Plaintiff and the Florida Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

246. Mazda's violations present a continuing risk to Florida Plaintiff and the Florida Sub-Class Members as well as to the general public. Mazda's unlawful acts and practices complained of herein affect the public interest.

247. As a proximate and direct result of Mazda's unfair and deceptive trade practices, Florida Plaintiff and members of the Florida Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm. These ascertainable losses include, among other things, overpayment at the time of purchase or lease, the cost to repair the Engine Coolant Defect, replacement of the damaged related system components, diminution of Class Vehicle resale value, increased repair and maintenance costs, and other substantial monetary damages and inconvenience.

248. As a direct and proximate result of Mazda's unfair or deceptive acts or practices alleged herein, Florida Plaintiff and other members of the Florida Sub-Class suffered and will continue to suffer actual damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Florida Plaintiff and the putative Class seek equitable and injunctive relief against Mazda on terms that the Court considers reasonable, and reasonable attorneys' fees.

249. Florida Plaintiff provided notice of their claims by letter dated May 3, 2024.

250. The foregoing acts, omissions, and practices proximately caused Florida Plaintiffs and the Florida Sub-Class Members to suffer real damages in the form of, *inter alia*, overpaying for the vehicles, as well as diminution of value of the vehicles, and they are entitled to recover such damages, together with all other appropriate damages, attorneys' fees, and costs of suit.

1
2

**SIXTH CAUSE OF ACTION**
**Breach of Express Warranty**
**F.S.A. §§ 672.313 and 680.21**
**(On behalf of the Florida Sub-Class)**

3    251.    Plaintiffs incorporate by reference the allegations contained in the

4    preceding paragraphs of this Complaint.

5    252.    Florida Plaintiff brings this cause of action individually and on behalf

6    of the members of the Florida Sub-Class against Mazda.

7    253.    Mazda is and was at all relevant times "merchants" with respect to

8    motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of

9    motor vehicles under § 672.103(1)(d).

10    254.    With respect to leases, Mazda is and was at all relevant times

11    "lessors" of motor vehicles under F.S.A. § 680.1031(1)(p).

12    255.    The Class Vehicles are and were at all relevant times "goods" within

13    the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

14    256.    Mazda provided all purchasers and lessees of the Class Vehicles with

15    the express warranty described herein, which became a material part of the

16    bargain.

17    257.    Mazda sold and leased the Class Vehicles with a written express

18    warranty covering the Vehicles and their engines for five years or 60,000 miles,

19    whichever comes first.

20    258.

21    259.    Mazda's express warranty, the "New Vehicle Limited Warranty,"

22    provides, in relevant part, that Mazda will provide warranty services when the

23    vehicle is brought to an authorized Mazda dealer The authorized Mazda dealer

24    will without charge for parts or labor, either repair or replace the defective part(s)

25    using new or authorized remanufactured parts. Mazda designed, manufactured

26    and/or installed the Engine and the Engine's component parts in the Class

27    Vehicles, and the engine and their component parts are covered by the express

28    Warranties.

260.    The Engine Coolant Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Florida Plaintiff and the Florida Sub-Class Members.

261.    Florida Plaintiff and the Florida Sub-Class Members relied on Mazda's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

262.    Under the express Warranties, Mazda was obligated to correct the Engine Coolant Defect in the vehicles owned or leased by Florida Plaintiff and the Florida Sub-Class Members.

263.    Although Mazda was obligated to correct the Engine Coolant Defect, none of the attempted fixes to the Engine Coolant Defect are adequate under the terms of the Warranties, as they did not cure the defect.

264.    Mazda breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, Mazda falsely informed Florida Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures, and/or replaced defective components in the Engine with equally defective components, without actually repairing the Class Vehicles.

265.    Mazda and its agent dealers have failed and refused to conform the Engine to the express Warranties. Mazda's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

266.    Moreover, Mazda's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Mazda's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

267.    The time limits contained in Mazda's warranty period were also unconscionable and inadequate to protect Florida Plaintiff and the Florida Sub-

Class Members. Among other things, Florida Plaintiff and the Florida Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Mazda. A gross disparity in bargaining power existed between Mazda and the Class Members, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale.

268.    Florida Plaintiff and the Florida Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

269.    Florida Plaintiff and the Florida Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of written warranty would have been futile. Mazda was also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Engine or components thereof, and through other internal and external sources.

270.    Because Mazda, through their conduct and exemplified by their own service bulletins, have covered repairs of the Engine Coolant Defect if Mazda determines the repairs are appropriately covered under the Warranties, Mazda cannot now deny that the Warranties cover the Engine Coolant Defect.

271.    Because Mazda has not been able to remedy the Engine Coolant Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

272.    As a direct and proximate cause of Mazda's breach, Florida Plaintiff and the Florida Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Florida Plaintiff and the Florida Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

273.    As a direct and proximate result of Mazda's breach of express warranties, Florida Plaintiff and the Florida Sub-Class Members have been damaged in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**F.S.A. §§ 672.314 and 680.212**
**(On behalf of the Florida Sub-Class)**

274.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

275.    Florida Plaintiff brings this cause of action individually and on behalf of the members of the Florida Sub-Class.

276.    Mazda is and was at all relevant times "merchants" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

277.    With respect to leases, Mazda is and was at all relevant times "lessors" of motor vehicles under F.S.A. § 680.1031(1)(p).

278.    The Class Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

279.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under F.S.A. §§ 672.314 and 680.212.

280.    Mazda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Mazda directly sold and marketed vehicles equipped with the Engine Coolant Defect to customers through authorized dealers, like those from whom Florida Plaintiff and the Florida Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing or leasing the vehicles. Mazda knew that the Class Vehicles would and did pass unchanged from Mazda to the authorized dealers to Florida Plaintiff and the Florida Sub-Class Members, with no modification to the defective

Engines.

281.    Mazda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

282.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Engine Coolant that were manufactured, supplied, distributed, and/or sold by Mazda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their Headlights would be fit for their intended use while the Class Vehicles were being operated.

283.    Contrary to the applicable implied warranties, the Class Vehicles and their Headlights, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design, installation, and manufacture of their Headlights and the existence of the Engine Coolant Defect at the time of sale or lease and thereafter. Mazda knew of this defect at the time these sale or lease transactions occurred.

284.    As a result of Mazda's breach of the applicable implied warranties, Florida Plaintiff and the Florida Sub-Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Engine Coolant Defect, Florida Plaintiff and the Florida Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' Engine components are substantially certain to fail before their expected useful life has run.

285.    Mazda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of F.S.A. §§ 672.314 and 680.212.

286.    Florida Plaintiff and the Florida Sub-Class Members have complied

1   with all obligations under the warranty, or otherwise have been excused from

2   performance of said obligations as a result of Mazda's conduct described herein.

3       287.    Florida Plaintiff and the Florida Sub-Class Members were not

4   required to notify Mazda of the breach because affording Mazda a reasonable

5   opportunity to cure their breach of implied warranty would have been futile.

6   Mazda were also on notice of the Engine Coolant Defect from the complaints and

7   service requests they received from Plaintiffs and the Class Members, from repairs

8   and/or replacements of the Engine or components thereof, and through other

9   internal sources.

10       288.    In addition, on or about May 3, 2024, Florida Plaintiff gave notice to

11   Mazda that they intended to pursue his warranty claims on behalf of a class of

12   similarly situated consumers.

13       289.    Because Florida Plaintiff purchased her vehicle and received the

14   remainder of the transferable warranties provided directly by Mazda, she has

15   privity with Mazda and is also the intended third-party beneficiary of Mazda's

16   implied warranties and the contracts between Mazda and their authorized dealers

17   for the purposes of warranty repairs.

18       290.    As a direct and proximate cause of Mazda's breach, Florida Plaintiff

19   and the Florida Sub-Class Members suffered damages and continue to suffer

20   damages, including economic damages at the point of sale or lease and diminution

21   of value of their Class Vehicles. Additionally, Florida Plaintiff and the Florida

22   Sub-Class Members have incurred or will incur economic damages at the point of

23   repair in the form of the cost of repair.

24       291.    As a direct and proximate result of Mazda's breach of the implied

25   warranty of merchantability, Florida Plaintiff and the Florida Sub-Class Members

26   have been damaged in an amount to be proven at trial.

27

28

**Claims on Behalf of the Ohio Sub-Class**

<u>EIGHTH CAUSE OF ACTION</u>
**Violations of the Ohio Consumer Sales Practices Act,**
**Ohio Rev. Code Ann. § 1345.01,** *et seq.*
**(On Behalf of the Ohio Sub-Class)**

292.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

293.   Plaintiffs Ryan and Melody Kaufman ("Ohio Plaintiffs") bring this cause of action individually and on behalf of the Ohio Sub-Class.

294.   Ohio Plaintiffs and members of the Ohio Sub-Class are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 ("Ohio CSPA").

295.   Mazda is a "supplier" as defined by the Ohio CSPA.

296.   Ohio Plaintiffs and the Ohio Sub-Class Members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the Ohio CSPA.

297.   The Ohio CSPA, Ohio Rev. Code Ann. § 1345.02, broadly prohibits "an unconscionable act or practice in connection with a consumer transaction." Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing "(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; [and] (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." Ohio Rev. Code Ann. § 1345.02. Mazda engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the Ohio CSPA.

298.   Mazda participated in and engaged in deceptive business or trade practices prohibited by the Ohio CSPA by failing to disclose and actively concealing that the Class Vehicles contained the Engine Coolant Defect, by marketing their Class Vehicles as safe and of high quality, and by presenting themselves as reputable manufacturers that valued safety and stood behind their vehicles after they were sold.

299.   Mazda knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles by, among other things, failing to disclose the Engine Coolant Defect; concealing the Engine Coolant Defect; promoting and selling or leasing Class Vehicles they knew were defective, including by marketing their vehicles as safe, reliable, easily operable, efficient, and of high quality; presenting themselves as reputable manufacturers that valued safety, reliability, performance and efficiency, and stood behind their vehicles after they were sold; failing to make repairs or making repairs and providing replacements that caused Ohio Plaintiffs and the Ohio Sub-Class Members to experience repeated instances of failure, rendering the New Vehicle Limited Warranty useless; and minimizing the scope and severity of the problems with the Class Vehicles, refusing to acknowledge that they are defective, and failing to provide adequate relief to consumers. Mazda misrepresented and omitted such material facts with the intent to mislead Ohio Plaintiffs and the Ohio Sub-Class Members about the true nature of the Class Vehicles.

300.   Mazda systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Engine Coolant Defect in the course of their business.

301.   Mazda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

302.   Mazda's unfair and deceptive acts or practices occurred repeatedly in Mazda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

303.   Mazda knew that the Class Vehicles and their engines suffered from an inherent defect, were defectively designed or manufactured, and were not

suitable for their intended use.

304.   Mazda knew or should have known that their conduct violated the Ohio CSPA.

305.   The Ohio Attorney General has made available for public inspection prior state court  decisions which have held that the acts and omissions of Mazda detailed in this complaint, including, but not limited to, the failure to honor implied warranties, the making and distribution of false, deception, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the Ohio CSPA.  These cases include, but are not limited to, the following: *Mason v. Mercedes Benz USA* (OPIF #10002382); *State ex rel. Montgomery v. Ford Motor Co.* (OPIF #10002123); *State ex rel. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025); *Bellinger v. Hewlett-Packard Co.*, 2002 WL 533403 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077); *Borror v. MarineMax of Ohio*, 2007 WL 431737 (Ohio Ct. Ap. Feb. 9, 2007) (OPIF #10002388); *State ex rel. Petro v. Craftmatic Organization, Inc.* (OPIF #10002347); *Cranford, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586); *State ex. Rel. Brown v. Lyons, et al.* (OPIF #10000304); *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427); *Khouri v. Lewis* (OPIF #10001995); *Mosley v. Performance Mitsubishi aka Automanage, Inc.* (OPIF #10001326); *Walls v. Harry Williams d/b/a Butch's Auto Sales* (OPIF #10001524); and *Brown v. Spears* (OPIF #10000403).

306.   Ohio Plaintiffs and the Ohio Sub-Class Members reasonably relied on Mazda's misrepresentations and omissions of material facts in their advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

307.   Ohio Plaintiffs and the Ohio Sub-Class Members had no way of discerning that Mazda's misrepresentations were false and misleading when they acquired their Class Vehicles because Ohio Plaintiffs and the Ohio Sub-Class Members did not have access to Mazda's exclusive and superior knowledge about

the Class Vehicles' design and the Engine Coolant Defect.

308.   Had Ohio Plaintiffs and the Ohio Sub-Class Members known that the Class Vehicles would contain and/or exhibit the Engine Coolant Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Mazda's misconduct.

309.   Mazda owed Ohio Plaintiffs and the Ohio Sub-Class Members a duty to disclose the truth about the Engine Coolant Defect because Mazda:

a.   possessed exclusive and superior knowledge of the design and manufacture of the Class Vehicles and the Engine Coolant Defect;

b.   intentionally concealed the foregoing from Ohio Plaintiffs and the Ohio Sub-Class Members; and/or

c.   made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding material facts from Ohio Plaintiffs and the Ohio Sub-Class Members that contradicted these representations.

310.   Due to Mazda's specific and superior knowledge that the Engines in the Class Vehicles will fail due to the Engine Coolant Defect, their false representations regarding the increased reliability and durability of the Class Vehicles, and reliance by Ohio Plaintiffs and the Ohio Sub-Class Members on these material representations, Mazda had a duty to disclose to Class Members that the Engine Coolant Defect will cause engine failure in Class Vehicles, that Class Vehicles do not have the expected durability, reliability, and/or safety over other vehicles or of their predecessor engines, that failure of the Engines will cause damage to Class Vehicle, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Ohio Plaintiffs and the Ohio Sub-Class Members, Mazda had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts

were material because they directly impact the value of the Class Vehicles purchased or leased by Ohio Plaintiffs and the Ohio Sub-Class Members. Longevity, durability, performance, and safety are material concerns to Mazda consumers. Mazda represented to Ohio Plaintiffs and the Ohio Sub-Class Members that they were purchasing or leasing vehicles that were durable, reliable, safe, efficient, of high quality, and containing engines of advanced and superior characteristics and technology as alleged throughout this Complaint, when in fact it is only a matter of time before the engines fail due to the Engine Coolant Defect.

311. Ohio Plaintiffs and the Ohio Sub-Class Members suffered injury in fact to a legally protected interest. As a result of Mazda's conduct, Ohio Plaintiffs and the Ohio Sub-Class Members were harmed and suffered actual damages in the form of the costs of diagnosis and repair of their vehicles, and the diminished value of their vehicles.

312. As a direct and proximate result of Mazda's unfair or deceptive acts or practices, Ohio Plaintiffs and the Ohio Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

313. Mazda's violations present a continuing risk to Ohio Plaintiffs and the Ohio Sub-Class Members as well as to the general public. Mazda's unlawful acts and practices complained of herein affect the public interest.

314. As a proximate and direct result of Mazda's unfair and deceptive trade practices, Ohio Plaintiffs and members of the Ohio Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm. These ascertainable losses include, among other things, overpayment at the time of purchase or lease, the cost to repair the Engine Coolant Defect, replacement of the damaged related system components, diminution of Class Vehicle resale value, increased repair and maintenance costs, and other substantial monetary damages and inconvenience.

315. As a direct and proximate result of Mazda's unfair or deceptive acts

or practices alleged herein, Ohio Plaintiffs and other members of the Ohio Sub-Class suffered and will continue to suffer actual damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Ohio Plaintiffs and the putative Class seek equitable and injunctive relief against Mazda on terms that the Court considers reasonable, and reasonable attorneys' fees.

316. Ohio Plaintiffs provided notice of their claims by letter dated May 3, 2024.

317. Pursuant to Ohio Rev. Code Ann. § 1345.09, Ohio Plaintiffs and the Ohio Sub-Class Members seek damages in an amount to be proven at trial, including but not limited to actual damages and attorneys' fees, under the Ohio CSPA.

### NINTH CAUSE OF ACTION
**Breach of Express Warranty**
**Ohio Rev. Code Ann. § 1302.26,** *et seq.*
**(On behalf of the Ohio Sub-Class)**

318. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

319. Ohio Plaintiffs bring this cause of action individually and on behalf of the members of the Ohio Sub-Class against Mazda.

320. Mazda are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code Ann. §§ 1302.01(5) and 1310.01(A)(20), and a "seller" of motor vehicles under § 1302.01(4).

321. With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code Ann. § 1310.01(A)(20).

322. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code Ann. §§ 1302.01(8) and 1310.01(A)(8).

323. Mazda provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the

bargain.

324.    Mazda sold and leased the Class Vehicles with a written express warranty covering the Vehicles for five years or 60,000 miles, whichever comes first.

325.    In a section entitled "New Vehicle Limited Warranty," Mazda's express warranty provides, in relevant part, that Mazda will provide warranty services when the vehicle is brought to an authorized Mazda dealer The authorized Mazda dealer will without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.

326.    Mazda designed, manufactured and/or installed the Engine and the Engine's component parts in the Class Vehicles, and the engine and their component parts are covered by the express Warranties.

327.    The Engine Coolant Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Ohio Plaintiffs and the Ohio Sub-Class Members.

328.    Ohio Plaintiffs and the Ohio Sub-Class Members relied on Mazda's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

329.    Under the express Warranties, Mazda were obligated to correct the Engine Coolant Defect in the vehicles owned or leased by Ohio Plaintiffs and the Ohio Sub-Class Members.

330.    Although Mazda were obligated to correct the Engine Coolant Defect, none of the attempted fixes to the Engine Coolant Defect are adequate under the terms of the Warranties, as they did not cure the defect.

331.    Mazda breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, Mazda falsely informed Ohio Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures, and/or replaced defective

components in the Engine with equally defective components, without actually repairing the Class Vehicles.

332.   Mazda and their agent dealers have failed and refused to conform the Engine to the express Warranties. Mazda's conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

333.   Moreover, Mazda's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Mazda's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

334.   The time limits contained in Mazda's warranty period were also unconscionable and inadequate to protect Ohio Plaintiffs and the Ohio Sub-Class Members. Among other things, Ohio Plaintiffs and the Ohio Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Mazda. A gross disparity in bargaining power existed between Mazda and the Class Members, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale.

335.   Ohio Plaintiffs and the Ohio Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

336.   Ohio Plaintiffs and the Ohio Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of written warranty would have been futile. Mazda were also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Engine or components thereof, and through other internal and external sources.

337.   Because Mazda, through their conduct and exemplified by their own service bulletins, have covered repairs of the Engine Coolant Defect if Mazda determine the repairs are appropriately covered under the Warranties, Mazda cannot now deny that the Warranties cover the Engine Coolant Defect.

338.   Because Mazda have not been able to remedy the Engine Coolant Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

339.   As a direct and proximate cause of Mazda's breach, Ohio Plaintiffs and the Ohio Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Ohio Plaintiffs and the Ohio Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

340.   As a direct and proximate result of Mazda's breach of express warranties, Ohio Plaintiffs and the Ohio Sub-Class Members have been damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**Ohio Rev. Code Ann. §§ 1302.27 and 1310.19**
**(On behalf of the Ohio Sub-Class)**

341.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

342.   Ohio Plaintiffs bring this cause of action individually and on behalf of the members of the Ohio Sub-Class.

343.   Mazda are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code Ann. §§ 1302.01(5) and 1310.01(A)(20), and a "seller" of motor vehicles under § 1302.01(4).

344.   With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code Ann. § 1310.01(A)(20).

345.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code Ann. §§ 1302.01(8) and 1310.01(A)(8).

346.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Ohio Rev. Code Ann. §§ 1302.27 and 1310.19.

347.   Mazda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Mazda directly sold and marketed vehicles equipped with the Engine Coolant Defect to customers through authorized dealers, like those from whom Ohio Plaintiffs and the Ohio Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing or leasing the vehicles. Mazda knew that the Class Vehicles would and did pass unchanged from Mazda to the authorized dealers to Ohio Plaintiffs and the Ohio Sub-Class Members, with no modification to the defective Engines.

348.   Mazda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

349.   This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Engine Coolant that were manufactured, supplied, distributed, and/or sold by Mazda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their Engine would be fit for their intended use while the Class Vehicles were being operated.

350.   Contrary to the applicable implied warranties, the Class Vehicles and their Headlights, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design, installation, and manufacture of their Headlights and the existence of the Engine Coolant Defect at the time of sale or lease and thereafter. Mazda knew of this defect at the time these sale or lease

transactions occurred.

351.    As a result of Mazda's breach of the applicable implied warranties, Ohio Plaintiffs and the Ohio Sub-Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Engine Coolant Defect, Ohio Plaintiffs and the Ohio Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' Headlight components are substantially certain to fail before their expected useful life has run.

352.    Mazda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Ohio Rev. Code Ann. §§ 1302.27 and 1310.19.

353.    Ohio Plaintiffs and the Ohio Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

354.    Ohio Plaintiffs and the Ohio Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of implied warranty would have been futile. Mazda were also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Engine or components thereof, and through other internal sources.

355.    In addition, on or about May 3, 2024, Ohio Plaintiffs gave notice to Mazda that they intended to pursue warranty claims on behalf of a class of similarly situated consumers.

356.    Because Ohio Plaintiffs purchased their vehicle and received the remainder of the transferable warranties provided directly by Mazda, they have privity with Mazda and are also the intended third-party beneficiary of Mazda's implied warranties and the contracts between Mazda and their authorized dealers

for the purposes of warranty repairs.

357. As a direct and proximate cause of Mazda's breach, Ohio Plaintiffs and the Ohio Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Ohio Plaintiffs and the Ohio Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

358. As a direct and proximate result of Mazda's breach of the implied warranty of merchantability, Ohio Plaintiffs and the Ohio Sub-Class Members have been damaged in an amount to be proven at trial.

**Claims on Behalf of the Oregon Sub-Class**

### ELEVENTH CAUSE OF ACTION
### Violations of the Oregon Unlawful Trade Practices Act,
### OR. REV. STAT. § 646.605, *et seq.*
### (On Behalf of the Oregon Sub-Class)

359. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

360. Plaintiffs Denise and Nathan Rohan ("Oregon Plaintiffs") bring this cause of action individually and on behalf of the Oregon Sub-Class.

361. Oregon Plaintiffs, the Oregon Sub-Class, and Mazda are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

362. The Class Vehicles constitute "goods" within the meaning of Or. Rev. Stat. § 646.605(6).

363. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "[] [r]eprent[ing] that… goods…have…characteristic… uses, benefits,… or qualities that they do not have;… [][r]epresent[ing] that… goods… are of a particular standard [or] quality…if they are of another;…[] [a]dvertis[ing]…goods or services with intent not to provide them as advertised;… [and][] engag[ing] in

any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1). Mazda engaged in unfair and deceptive practices that violated the Oregon UTPA as described above.

364.   Mazda participated in and engaged in deceptive business or trade practices prohibited by the Oregon UTPA by failing to disclose and actively concealing that the Class Vehicles contained the Engine Coolant Defect, by marketing their Class Vehicles as safe and of high quality, and by presenting themselves as reputable manufacturers that valued safety and stood behind their vehicles after they were sold.

365.   Mazda knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles by, among other things, failing to disclose the Engine Coolant Defect; concealing the Engine Coolant Defect; promoting and selling or leasing Class Vehicles they knew were defective, including by marketing their vehicles as safe, reliable, easily operable, efficient, and of high quality; presenting themselves as reputable manufacturers that valued safety, reliability, performance and efficiency, and stood behind their vehicles after they were sold; failing to make repairs or making repairs and providing replacements that caused Oregon Plaintiffs and the Oregon Sub-Class Members to experience repeated instances of failure, rendering the New Vehicle Limited Warranty useless; and minimizing the scope and severity of the problems with the Class Vehicles, refusing to acknowledge that they are defective, and failing to provide adequate relief to consumers. Mazda misrepresented and omitted such material facts with the intent to mislead Oregon Plaintiffs and the Oregon Sub-Class Members about the true nature of the Class Vehicles.

366.   Mazda systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Engine Coolant Defect in the course of their business.

367.   Mazda also engaged in unlawful trade practices by employing

deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

368.   Mazda's unfair and deceptive acts or practices occurred repeatedly in Mazda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

369.   Mazda knew that the Class Vehicles and their engines suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

370.   Mazda knew or should have known that their conduct violated the Oregon UTPA.

371.   Oregon Plaintiffs and the Oregon Sub-Class Members reasonably relied on Mazda's misrepresentations and omissions of material facts in their advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

372.   Oregon Plaintiffs and the Oregon Sub-Class Members had no way of discerning that Mazda's misrepresentations were false and misleading when they acquired their Class Vehicles because Oregon Plaintiffs and the Oregon Sub-Class Members did not have access to Mazda's exclusive and superior knowledge about the Class Vehicles' design and the Engine Coolant Defect.

373.   Had Oregon Plaintiffs and the Oregon Sub-Class Members known that the Class Vehicles would contain and/or exhibit the Engine Coolant Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Mazda's misconduct.

374.   Mazda owed Oregon Plaintiffs and the Oregon Sub-Class Members a duty to disclose the truth about the Engine Coolant Defect because Mazda:

    a.    possessed exclusive and superior knowledge of the design and

manufacture of the Class Vehicles and the Engine Coolant Defect;

b.    intentionally concealed the foregoing from Oregon Plaintiffs and the Oregon Sub-Class Members; and/or

c.    made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding material facts from Oregon Plaintiffs and the Oregon Sub-Class Members that contradicted these representations.

375.    Due to Mazda's specific and superior knowledge that the Engines in the Class Vehicles will fail due to the Engine Coolant Defect, their false representations regarding the increased durability of the Class Vehicles, and reliance by Oregon Plaintiffs and the Oregon Sub-Class Members on these material representations, Mazda had a duty to disclose to Class Members that the Engine Coolant Defect will cause engine failure in Class Vehicles, that Class Vehicles do not have the expected durability, reliability, and/or safety over other vehicles or of their predecessor engines, that failure of the Engines will cause damage to Class Vehicle, and that Class Members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Oregon Plaintiffs and the Oregon Sub-Class Members, Mazda had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Oregon Plaintiffs and the Oregon Sub-Class Members. Longevity, durability, performance, and safety are material concerns to Mazda consumers. Mazda represented to Oregon Plaintiffs and the Oregon Sub-Class Members that they were purchasing or leasing vehicles that were durable, reliable, safe, efficient, of high quality, and containing engines of advanced and superior characteristics and technology as alleged throughout this Complaint, when in fact it is only a matter of time before the engines fail due to the Engine Coolant Defect.

376.    Oregon Plaintiffs and the Oregon Sub-Class Members suffered injury

in fact to a legally protected interest. As a result of Mazda's conduct, Oregon Plaintiffs and the Oregon Sub-Class Members were harmed and suffered actual damages in the form of the costs of diagnosis and repair of their vehicles, and the diminished value of their vehicles.

377.    As a direct and proximate result of Mazda's unfair or deceptive acts or practices, Oregon Plaintiffs and the Oregon Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

378.    Mazda's violations present a continuing risk to Oregon Plaintiffs and the Oregon Sub-Class Members as well as to the general public. Mazda's unlawful acts and practices complained of herein affect the public interest.

379.    As a proximate and direct result of Mazda's unfair and deceptive trade practices, Oregon Plaintiffs and members of the Oregon Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm. These ascertainable losses include, among other things, overpayment at the time of purchase or lease, the cost to repair the Engine Coolant Defect, replacement of the damaged related system components, diminution of Class Vehicle resale value, increased repair and maintenance costs, and other substantial monetary damages and inconvenience.

380.    As a direct and proximate result of Mazda's unfair or deceptive acts or practices alleged herein, Oregon Plaintiffs and other members of the Oregon Sub-Class suffered and will continue to suffer actual damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Oregon Plaintiffs and the putative Class seek equitable and injunctive relief against Mazda on terms that the Court considers reasonable, and reasonable attorneys' fees.

381.    Oregon Plaintiffs provided notice of their claims by letter dated May 3, 2024.

382.    Pursuant to Or. Rev. Stat. § 646.638(1), Oregon Plaintiffs and the

Oregon Sub-Class Members seek damages in an amount to be proven at trial, including but not limited to actual damages and attorneys' fees, under the Oregon UTPA.

**TWELFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**OR. REV. STAT. §§ 72.3130, 72A.1030 and 72A.2100**
**(On behalf of the Oregon Sub-Class)**

383.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

384.    Oregon Plaintiffs bring this cause of action individually and on behalf of the members of the Oregon Sub-Class against Mazda.

385.    Mazda are and were at all relevant times "merchants" with respect to motor vehicles under Or. Rev. Stat. §§ 72A.104(1) and 72A.1030(1)(t) and "sellers" of motor vehicles under Or. Rev. Stat. § 72.1030(1)(d).

386.    With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. § 72.1030(1)(p).

387.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

388.    Mazda provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

389.    Mazda sold and leased the Class Vehicles with a written express warranty covering the Vehicles for five years or 60,000 miles, whichever comes first.

390.    In a section entitled "New Vehicle Limited Warranty," Mazda's express warranty provides, in relevant part, that Mazda will provide warranty services when the vehicle is brought to an authorized Mazda dealer The authorized Mazda dealer will without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts. Mazda designed,

manufactured and/or installed the Engine and the Engine's component parts in the Class Vehicles, and the engine and their component parts are covered by the express Warranties.

391.    The Engine Coolant Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Oregon Plaintiffs and the Oregon Sub-Class Members.

392.    Oregon Plaintiffs and the Oregon Sub-Class Members relied on Mazda's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

393.    Under the express Warranties, Mazda were obligated to correct the Engine Coolant Defect in the vehicles owned or leased by Oregon Plaintiffs and the Oregon Sub-Class Members.

394.    Although Mazda were obligated to correct the Engine Coolant Defect, none of the attempted fixes to the Engine Coolant Defect are adequate under the terms of the Warranties, as they did not cure the defect.

395.    Mazda breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, Mazda falsely informed Oregon Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures, and/or replaced defective components in the Engine with equally defective components, without actually repairing the Class Vehicles.

396.    Mazda and their agent dealers have failed and refused to conform the Engine to the express Warranties. Mazda's conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

397.    Moreover, Mazda's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Mazda's warranty limitation is unenforceable

because it knowingly sold a defective product without informing consumers about the defect.

398.    The time limits contained in Mazda's warranty period were also unconscionable and inadequate to protect Oregon Plaintiffs and the Oregon Sub-Class Members. Among other things, Oregon Plaintiffs and the Oregon Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Mazda. A gross disparity in bargaining power existed between Mazda and the Class Members, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale.

399.    Oregon Plaintiffs and the Oregon Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

400.    Oregon Plaintiffs and the Oregon Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of written warranty would have been futile. Mazda were also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Engine or components thereof, and through other internal and external sources.

401.    Because Mazda, through their conduct and exemplified by their own service bulletins, have covered repairs of the Engine Coolant Defect if Mazda determine the repairs are appropriately covered under the Warranties, Mazda cannot now deny that the Warranties cover the Engine Coolant Defect.

402.    Because Mazda have not been able to remedy the Engine Coolant Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

403.    As a direct and proximate cause of Mazda's breach, Oregon Plaintiffs and the Oregon Sub-Class Members suffered damages and continue to suffer

damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Oregon Plaintiffs and the Oregon Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

404.    As a direct and proximate result of Mazda's breach of express warranties, Oregon Plaintiffs and the Oregon Sub-Class Members have been damaged in an amount to be determined at trial.

**THIRTEENTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**OR. REV. STAT. §§ 72.3140, 72.3150, 72A.1030 and 72A.2120**
**(On behalf of the Oregon Sub-Class)**

405.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

406.    Oregon Plaintiffs bring this cause of action individually and on behalf of the members of the Oregon Sub-Class.

407.    Mazda are and were at all relevant times "merchants" with respect to motor vehicles under Or. Rev. Stat. §§ 72A.1040(1) and 72A.1030(1)(t) and "sellers" of motor vehicles under § 72.1030(1)(d).

408.    With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. §§ 72A.1050(1) and 72A.1030(1)(h).

409.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

410.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Or. Rev. Stat. §§ 72.1050(1) and 72A.2120.

411.    Mazda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Mazda directly sold and marketed vehicles equipped with the Engine Coolant Defect to customers through

authorized dealers, like those from whom Oregon Plaintiffs and the Oregon Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing or leasing the vehicles. Mazda knew that the Class Vehicles would and did pass unchanged from Mazda to the authorized dealers to Oregon Plaintiffs and the Oregon Sub-Class Members, with no modification to the defective Engines.

412.   Mazda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

413.   This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Engine Coolant that were manufactured, supplied, distributed, and/or sold by Mazda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their Headlights would be fit for their intended use while the Class Vehicles were being operated.

414.   Contrary to the applicable implied warranties, the Class Vehicles and their Headlights, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design, installation, and manufacture of their Headlights and the existence of the Engine Coolant Defect at the time of sale or lease and thereafter. Mazda knew of this defect at the time these sale or lease transactions occurred.

415.   As a result of Mazda's breach of the applicable implied warranties, Oregon Plaintiffs and the Oregon Sub-Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Engine Coolant Defect, Oregon Plaintiffs and the Oregon Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' Headlight components are substantially certain to fail before their expected useful

1   life has run.

2       416.    Mazda's actions, as complained of herein, breached the implied

3   warranty that the Class Vehicles were of merchantable quality and fit for such use

4   in violation of Or. Rev. Stat. §§ 72.3140 and 72A-2120.

5       417.    Oregon Plaintiffs and the Oregon Sub-Class Members have complied

6   with all obligations under the warranty, or otherwise have been excused from

7   performance of said obligations as a result of Mazda's conduct described herein.

8       418.    Oregon Plaintiffs and the Oregon Sub-Class Members were not

9   required to notify Mazda of the breach because affording Mazda a reasonable

10  opportunity to cure their breach of implied warranty would have been futile.

11  Mazda were also on notice of the Engine Coolant Defect from the complaints and

12  service requests they received from Plaintiffs and the Class Members, from repairs

13  and/or replacements of the Headlights or components thereof, and through other

14  internal sources.

15      419.    In addition, on or about May 3, 2024, Oregon Plaintiffs gave notice

16  to Mazda that they intended to pursue his warranty claims on behalf of a class of

17  similarly situated consumers.

18      420.    Because Oregon Plaintiffs purchased his vehicle from an authorized

19  Mazda dealer, he is in privity with Mazda since, (1) an agency relationship

20  establishes privity for purposes of the breach of implied warranty claims, and (2)

21  privity is not required where plaintiffs are intended third-party beneficiaries of a

22  defendant's implied warranties and the contracts between Mazda and their

23  authorized dealers.

24      421.    As a direct and proximate cause of Mazda's breach, Oregon Plaintiffs

25  and the Oregon Sub-Class Members suffered damages and continue to suffer

26  damages, including economic damages at the point of sale or lease and diminution

27  of value of their Class Vehicles. Additionally, Oregon Plaintiffs and the Oregon

28  Sub-Class Members have incurred or will incur economic damages at the point of

1  repair in the form of the cost of repair.

2  422. As a direct and proximate result of Mazda's breach of the implied

3  warranty of merchantability, Oregon Plaintiffs and the Oregon Sub-Class

4  Members have been damaged in an amount to be proven at trial.

5  **Claims on Behalf of the Texas Sub-Class**

6  <u>**FOURTEENTH CAUSE OF ACTION**</u>
**Violations of the Texas Deceptive Trade Practices Act Consumer Protection**

7  **Act,**
**TEX. BUS. & COM. Code § 17.41, *et seq.***

8  **(On Behalf of the Texas Sub-Class)**

9  423. Plaintiffs incorporate by reference the allegations contained in the

10  preceding paragraphs of this Complaint.

11  424. Plaintiff Meshullam Wallace ("Texas Plaintiffs") bring this cause of

12  action individually and on behalf of the Texas Sub-Class.

13  425. Mazda's business acts and practices alleged herein constitute unfair,

14  unconscionable and/or deceptive methods, acts or practices under the Texas

15  Deceptive Trade Practices Act-Consumer Protection Act, § 17.41, et seq., ("Texas

16  DTPA").

17  426. Mazda defendants are each a "person" as that term is defined in Tex.

18  Bus. & Com. Code § 17.45(3).

19  427. Texas Plaintiffs and the members of the Texas Sub-Class are

20  individuals, partnerships, or corporations with assets of less than $25 million (or

21  are controlled by corporations or entities with less than $25 million in assets), *see*

22  Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex.

23  Bus. & Com. Code § 17.45(4)

24  428. Mazda is engaged in "trade" or "commerce" or "consumer

25  transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

26  429. The Texas Deceptive Trade Practices – Consumer Protection Act

27  ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the

28  conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an

"unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3). Mazda engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the Texas DTPA

430.   Mazda participated in unfair or deceptive trade practices that violated the Texas DTPA.  As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its vehicles as safe, reliable, well-engineered, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, performance and reliability, and stood behind its vehicles after they were sold, Mazda knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Mazda systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and the Defect in the course of its business.

431.   Mazda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

432.   Mazda's unfair and deceptive acts or practices occurred repeatedly in Mazda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

433.   Mazda knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

434.   Mazda knew or should have known its conduct violated the Texas DTPA.

435.   Mazda was under a duty to the Texas Plaintiffs and the Texas Sub-Class Members to disclose the defective nature of the Class Vehicles because:

a.   possessed exclusive and superior knowledge of the design and manufacture of the Class Vehicles and the Engine Coolant Defect;

b.   intentionally concealed the foregoing from Texas Plaintiffs and the Texas Sub-Class Members; and/or

c.   made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding material facts from Texas Plaintiffs and the Texas Sub-Class Members that contradicted these representations.

436.   By failing to disclose the Defect, Mazda knowingly and intentionally concealed material facts and breached its duty not to do so.

437.   The facts concealed or not disclosed by Mazda to Texas Plaintiffs and the Texas Sub-Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Mazda's Class Vehicles, or to pay less for them. Whether a vehicle's engine is defective, resulting in unexpected loss of motive power, engine jerking, stalling, failing to accelerate, and/or bursting into flames, the risk of collision is drastically increased due to the consumer's inability to maintain steering, braking, and speed control, thereby putting consumers, passengers, and bystanders in danger, is a material safety concern. Had Texas Plaintiffs and the Texas Sub-Class Members known that the Class Vehicles suffered from the Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

438.   Texas Plaintiff and the Texas Sub-Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

439.   As a direct and proximate result of Mazda's unfair or deceptive acts

or practices, Texas Plaintiffs and the Texas Sub-Class Members have suffered and will continue to suffer actual damages.

440.    Mazda's violations present a continuing risk to Texas Plaintiff and the Texas Sub-Class Members as well as to the general public. Mazda's unlawful acts and practices complained of herein affect the public interest.

441.    Texas Plaintiffs provided notice of their claims under the Texas UTPA by letter dated May 9, 2024.

442.    The foregoing acts, omissions, and practices proximately caused Texas Plaintiffs and the Texas Sub-Class Members to suffer real damages in the form of, *inter alia*, overpaying for the vehicles, as well as diminution of value of the vehicles, and they are entitled to recover such damages, together with all other appropriate damages, attorneys' fees, and costs of suit.

**FIFTEENTH CAUSE OF ACTION**
**Breach of Express Warranty**
**TEX. BUS. & COM. CODE §§ 2.313 and 2A.210**
**(On behalf of the Texas Sub-Class)**

443.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

444.    Texas Plaintiffs bring this cause of action individually and on behalf of the members of the Texas Sub-Class against Mazda.

445.    Mazda are and were at all relevant times "merchants" with respect to motor vehicles under Texas Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20) and "sellers" of motor vehicles under § 2.103(a)(4).

446.    With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Texas Bus. & Com. Code § 2A.103(a)(16).

447.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

448.    Mazda provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the

bargain.

449.     Mazda sold and leased the Class Vehicles with a written express warranty covering the Vehicles for five years or 60,000 miles, whichever comes first.

450.     In a section entitled "New Vehicle Limited Warranty," Mazda's express warranty provides, in relevant part, that Mazda will provide warranty services when the vehicle is brought to an authorized Mazda dealer. The authorized Mazda dealer will without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.

451.     Mazda designed, manufactured and/or installed the Engine and the Engine's component parts in the Class Vehicles, and the engine and their component parts are covered by the express Warranties.

452.     The Engine Coolant Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Texas Plaintiffs and the Texas Sub-Class Members.

453.     Texas Plaintiffs and the Texas Sub-Class Members relied on Mazda's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

454.     Under the express Warranties, Mazda were obligated to correct the Engine Coolant Defect in the vehicles owned or leased by Texas Plaintiffs and the Texas Sub-Class Members.

455.     Although Mazda were obligated to correct the Engine Coolant Defect, none of the attempted fixes to the Engine Coolant Defect are adequate under the terms of the Warranties, as they did not cure the defect.

456.     Mazda breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, Mazda falsely informed Texas Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures, and/or replaced defective

components in the Engine with equally defective components, without actually repairing the Class Vehicles.

457.    Mazda and their agent dealers have failed and refused to conform the Engine to the express Warranties. Mazda's conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

458.    Moreover, Mazda's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Mazda's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

459.    The time limits contained in Mazda's warranty period were also unconscionable and inadequate to protect Texas Plaintiffs and the Texas Sub-Class Members. Among other things, Texas Plaintiffs and the Texas Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Mazda. A gross disparity in bargaining power existed between Mazda and the Class Members, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale.

460.    Texas Plaintiffs and the Texas Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

461.    Texas Plaintiffs and the Texas Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of written warranty would have been futile. Mazda were also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Engine or components thereof, and through other internal and external sources.

462.    Nonetheless, Texas Plaintffs provided notice to Mazda of the breach of express warranties when he repeatedly took his vehicle to authorized GM dealerships and requested warranty repairs.  Texas Plaintiffs further provide notice to Mazda of his claims via letter dated May 9, 2024.

463.    Because Mazda, through their conduct and exemplified by their own service bulletins, have covered repairs of the Engine Coolant Defect if Mazda determine the repairs are appropriately covered under the Warranties, Mazda cannot now deny that the Warranties cover the Engine Coolant Defect.

464.    Because Mazda have not been able to remedy the Engine Coolant Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

465.    As a direct and proximate cause of Mazda's breach, Texas Plaintiffs and the Texas Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Texas Plaintiffs and the Texas Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

466.    As a direct and proximate result of Mazda's breach of express warranties, Texas Plaintiffs and the Texas Sub-Class Members have been damaged in an amount to be determined at trial.

### SIXTEENTH CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability
### TEX. BUS. & COM. CODE §§ 2.314 and 2A.212
### (On behalf of the Texas Sub-Class)

467.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

468.    Texas Plaintiffs bring this cause of action individually and on behalf of the members of the Texas Sub-Class.

469.    Mazda are and were at all relevant times "merchants" with respect to

motor vehicles under Texas Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

470. With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Texas Bus. & Com. Code § 2A.103(a)(16).

471. The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

472. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Texas Bus. & Com. Code §§ 2.314 and 2A.212.

473. Mazda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Mazda directly sold and marketed vehicles equipped with the Engine Coolant Defect to customers through authorized dealers, like those from whom Texas Plaintiffs and the Texas Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing or leasing the vehicles. Mazda knew that the Class Vehicles would and did pass unchanged from Mazda to the authorized dealers to Texas Plaintiffs and the Texas Sub-Class Members, with no modification to the defective Engines.

474. Mazda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

475. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Engine Coolant that were manufactured, supplied, distributed, and/or sold by Mazda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their Headlights would be fit for their intended use while the Class Vehicles were being operated.

476. Contrary to the applicable implied warranties, the Class Vehicles and their Headlights, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable,

durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design, installation, and manufacture of their Headlights and the existence of the Engine Coolant Defect at the time of sale or lease and thereafter. Mazda knew of this defect at the time these sale or lease transactions occurred.

477.    As a result of Mazda's breach of the applicable implied warranties, Texas Plaintiffs and the Texas Sub-Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Engine Coolant Defect, Texas Plaintiffs and the Texas Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' Headlight components are substantially certain to fail before their expected useful life has run.

478.    Mazda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Texas Bus. & Com. Code §§ 2.314 and 2A.212.

479.    Texas Plaintiffs and the Texas Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

480.    Texas Plaintiffs and the Texas Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of implied warranty would have been futile. Mazda were also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Headlights or components thereof, and through other internal sources.

481.    In addition, on or about May 3, 2024, Texas Plaintiffs gave notice to Mazda that they intended to pursue his warranty claims on behalf of a class of similarly situated consumers.

482.   Because Texas Plaintiffs purchased his vehicle from an authorized Mazda dealer, he is in privity with Mazda since, (1) an agency relationship establishes privity for purposes of the breach of implied warranty claims, and (2) privity is not required where plaintiffs are intended third-party beneficiaries of a defendant's implied warranties and the contracts between Mazda and their authorized dealers.

483.   As a direct and proximate cause of Mazda's breach, Texas Plaintiffs and the Texas Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Texas Plaintiffs and the Texas Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

484.   As a direct and proximate result of Mazda's breach of the implied warranty of merchantability, Texas Plaintiffs and the Texas Sub-Class Members have been damaged in an amount to be proven at trial.

**Claims on Behalf of the Washington Sub-Class**

**FIRST CAUSE OF ACTION**
**Violations of the Washington Consumer Protection Act,**
**WASH. REV. CODE § 19.86.010, *et seq.***
**(On Behalf of the Washington Sub-Class)**

485.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

486.   Plaintiffs Calen and Tiffany Regnier ("Washington Plaintiffs") bring this cause of action individually and on behalf of the Washington Sub-Class.

487.   Washington Plaintiffs, member of the Washington Sub-Class, and Mazda are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020. Mazda

engaged in unlawful trade practices and unfair or deceptive acts or practices that violated the Washington CPA.

488.    Mazda participated in unfair or deceptive trade practices that violated the Washington DTPA.    As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its vehicles as safe, reliable, well-engineered, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, performance and reliability, and stood behind its vehicles after they were sold, Mazda knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Mazda systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and the Defect in the course of its business.

489.    Mazda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

490.    Mazda's unfair and deceptive acts or practices occurred repeatedly in Mazda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

491.    Mazda knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

492.    Mazda knew or should have known its conduct violated the Washington CPA.

493.    Mazda was under a duty to the Washington Plaintiffs and the Washington Sub-Class Members to disclose the defective nature of the Class Vehicles because:

1      d.      possessed exclusive and superior knowledge of the design and

2  manufacture of the Class Vehicles and the Engine Coolant Defect;

3      e.      intentionally concealed the foregoing from Washington

4  Plaintiffs and the Washington Sub-Class Members; and/or

5      f.      made incomplete representations regarding the quality and

6  durability of the Class Vehicles, while purposefully withholding material facts from

7  Washington Plaintiffs and the Washington Sub-Class Members that contradicted

8  these representations.

9      494.   By failing to disclose the Defect, Mazda knowingly and intentionally

10  concealed material facts and breached its duty not to do so.

11      495.   The facts concealed or not disclosed by Mazda to Washington

12  Plaintiffs and the Washington Sub-Class Members are material because a

13  reasonable person would have considered them to be important in deciding

14  whether or not to purchase or lease Mazda's Class Vehicles, or to pay less for

15  them. Whether a vehicle's engine is defective, resulting in unexpected loss of

16  motive power, engine jerking, stalling, failing to accelerate, and/or bursting into

17  flames, the risk of collision is drastically increased due to the consumer's inability

18  to maintain steering, braking, and speed control, thereby putting consumers,

19  passengers, and bystanders in danger, is a material safety concern. Had

20  Washington Plaintiffs and the Washington Sub-Class Members known that the

21  Class Vehicles suffered from the Defect described herein, they would not have

22  purchased or leased the Class Vehicles or would have paid less for them.

23      496.   Washington Plaintiff and the Washington Sub-Class Members are

24  reasonable consumers who do not expect that their vehicles will suffer from the

25  Defect. That is the reasonable and objective consumer expectation for vehicles.

26      497.   As a direct and proximate result of Mazda's unfair or deceptive acts

27  or practices, Washington Plaintiffs and the Washington Sub-Class Members have

28  suffered and will continue to suffer actual damages.

498.    Mazda's violations present a continuing risk to Washington Plaintiff and the Washington Sub-Class Members as well as to the general public.  Mazda's unlawful acts and practices complained of herein affect the public interest.

499.    Washington Plaintiffs provided notice of their claims under the Washington CPA by letter dated May 10, 2024.

500.    The foregoing acts, omissions, and practices proximately caused Washington Plaintiffs and the Washington Sub-Class Members to suffer real damages in the form of, *inter alia*, overpaying for the vehicles, as well as diminution of value of the vehicles, and they are entitled to recover such damages, together with all other appropriate damages, attorneys' fees, and costs of suit.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**WASH. REV. CODE §§ 62A.2-313 and 62A.2A-210**
**(On behalf of the Washington Sub-Class)**

501.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

502.    Washington Plaintiffs bring this cause of action individually and on behalf of the members of the Washington Sub-Class against Mazda.

503.    Mazda are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1) and "sellers" of motor vehicles under § 62A.2-103(d).

504.    With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(a)(p).

505.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A103(1)(h).

506.    Mazda provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

507.    Mazda sold and leased the Class Vehicles with a written express

warranty covering the Vehicles for five years or 60,000 miles, whichever comes first.

508. In a section entitled "New Vehicle Limited Warranty," Mazda's express warranty provides, in relevant part, that Mazda will provide warranty services when the vehicle is brought to an authorized Mazda dealer. The authorized Mazda dealer will without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.

509. Mazda designed, manufactured and/or installed the Engine and the Engine's component parts in the Class Vehicles, and the engine and their component parts are covered by the express Warranties.

510. The Engine Coolant Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Washington Plaintiffs and the Washington Sub-Class Members.

511. Washington Plaintiffs and the Washington Sub-Class Members relied on Mazda's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

512. Under the express Warranties, Mazda were obligated to correct the Engine Coolant Defect in the vehicles owned or leased by Washington Plaintiffs and the Washington Sub-Class Members.

513. Although Mazda were obligated to correct the Engine Coolant Defect, none of the attempted fixes to the Engine Coolant Defect are adequate under the terms of the Warranties, as they did not cure the defect.

514. Mazda breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, Mazda falsely informed Washington Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures, and/or replaced defective components in the Engine with equally defective components, without actually repairing the Class Vehicles.

515.    Mazda and their agent dealers have failed and refused to conform the Engine to the express Warranties. Mazda's conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

516.    Moreover, Mazda's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Mazda's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

517.    The time limits contained in Mazda's warranty period were also unconscionable and inadequate to protect Washington Plaintiffs and the Washington Sub-Class Members. Among other things, Washington Plaintiffs and the Washington Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Mazda. A gross disparity in bargaining power existed between Mazda and the Class Members, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale.

518.    Washington Plaintiffs and the Washington Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

519.    Washington Plaintiffs and the Washington Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of written warranty would have been futile. Mazda were also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Engine or components thereof, and through other internal and external sources.

520.    Nonetheless, Washington Plaintiffs provided notice to Mazda of the breach of express warranties when he repeatedly took his vehicle to authorized GM dealerships and requested warranty repairs.  Washington Plaintiffs further provide notice to Mazda of his claims via letter dated May 10, 2024.

521.    Because Mazda, through their conduct and exemplified by their own service bulletins, have covered repairs of the Engine Coolant Defect if Mazda determine the repairs are appropriately covered under the Warranties, Mazda cannot now deny that the Warranties cover the Engine Coolant Defect.

522.    Because Mazda have not been able to remedy the Engine Coolant Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

523.    As a direct and proximate cause of Mazda's breach, Washington Plaintiffs and the Washington Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Washington Plaintiffs and the Washington Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

524.    As a direct and proximate result of Mazda's breach of express warranties, Washington Plaintiffs and the Washington Sub-Class Members have been damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**WASH. REV. CODE §§ 62A.2-314 and 62A.2A-212**
**(On behalf of the Washington Sub-Class)**

525.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

526.    Washington Plaintiffs bring this cause of action individually and on behalf of the members of the Washington Sub-Class.

527.    Mazda are and were at all relevant times "merchants" with respect to

motor vehicles under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1) and "sellers" of motor vehicles under § 62A.2-103(d).

528.    With respect to leases, Mazda are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(a)(p).

529.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A103(1)(h).

530.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

531.    Mazda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Mazda directly sold and marketed vehicles equipped with the Engine Coolant Defect to customers through authorized dealers, like those from whom Washington Plaintiffs and the Washington Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing or leasing the vehicles. Mazda knew that the Class Vehicles would and did pass unchanged from Mazda to the authorized dealers to Washington Plaintiffs and the Washington Sub-Class Members, with no modification to the defective Engines.

532.    Mazda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

533.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Engine Coolant that were manufactured, supplied, distributed, and/or sold by Mazda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their Headlights would be fit for their intended use while the Class Vehicles were being operated.

534.    Contrary to the applicable implied warranties, the Class Vehicles and their Headlights, at the time of sale and thereafter, were not fit for their ordinary

and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design, installation, and manufacture of their Headlights and the existence of the Engine Coolant Defect at the time of sale or lease and thereafter. Mazda knew of this defect at the time these sale or lease transactions occurred.

535.    As a result of Mazda's breach of the applicable implied warranties, Washington Plaintiffs and the Washington Sub-Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Engine Coolant Defect, Washington Plaintiffs and the Washington Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' Headlight components are substantially certain to fail before their expected useful life has run.

536.    Mazda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

537.    Washington Plaintiffs and the Washington Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

538.    Washington Plaintiffs and the Washington Sub-Class Members were not required to notify Mazda of the breach because affording Mazda a reasonable opportunity to cure their breach of implied warranty would have been futile. Mazda were also on notice of the Engine Coolant Defect from the complaints and service requests they received from Plaintiffs and the Class Members, from repairs and/or replacements of the Headlights or components thereof, and through other internal sources.

539.    In addition, on or about May 10, 2024, Washington Plaintiffs gave

notice to Mazda that they intended to pursue his warranty claims on behalf of a class of similarly situated consumers.

540.   Because Washington Plaintiffs purchased his vehicle from an authorized Mazda dealer, they are in privity with Mazda since, (1) an agency relationship between the authorized dealerships and Mazda establishes privity for purposes of the breach of implied warranty claims, and (2) privity is not required where plaintiffs are intended third-party beneficiaries of a defendant's implied warranties and the contracts between Mazda and their authorized dealers.

541.   As a direct and proximate cause of Mazda's breach, Washington Plaintiffs and the Washington Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Washington Plaintiffs and the Washington Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

542.   As a direct and proximate result of Mazda's breach of the implied warranty of merchantability, Washington Plaintiffs and the Washington Sub-Class Members have been damaged in an amount to be proven at trial.

## RELIEF REQUESTED

543.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court enter judgment against Mazda, as follows:

    (a) An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

    (b) A declaration that Mazda are financially responsible for notifying all Class Members about the defective nature of the engine;

    (c) An order enjoining Mazda from further deceptive distribution, sales, and lease practices with respect to Class Vehicles;

compelling Mazda to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Mazda to repair and eliminate the Engine Coolant Defect from every Class Vehicle; enjoining Mazda from selling the Class Vehicles with the misleading information; and/or compelling Mazda to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e) Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f) A declaration that Mazda must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles or make full restitution to Plaintiffs and Class Members;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of pre-judgment and post-judgment interest, as provided by law;

(i) Leave to amend the Complaint to conform to the evidence produced at trial; and

(j) Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

544.   Pursuant to Federal Rule of Civil Procedure 38(b) and Central District of California Local Rule 38-1, Plaintiffs hereby demand a trial by jury of all issues in this action so triable.

Dated:  \_\_May 16, 2024_____          Respectfully submitted,

CAPSTONE LAW APC


By: /s/ Laura E. Goolsby
Tarek H. Zohdy
Cody R. Padgett
Laura E. Goolsby
Nathan N. Kiyam

BERGER MONTAGUE PC
Russell D. Paul*
Abigail J. Gertner*
Amey J. Park*

*pro hac vice forthcoming

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT